## Casualty Company of America v. Taylor.

(Decided May 20, 1915.)

### Appeal from Knox Circuit Court.

Insurance—Accident—Liability of Insurer Where Insured Dies from the Infection of Wounds Intentionally Inflicted by Another Person.—Where the immediate cause of the death of the insured was gangrene, caused by infection that set up after the infliction of intentional wounds, not in themselves necessarily fatal, and the evidence does not show that the gangrene was produced by some independent cause that set up after the wounds were inflicted, the liability of the company is limited, as stipulated in the policy, to one-fifth of the principal sum named in the policy.

J. D. TUGGLE for appellant.

GOLDEN & LAY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

George F. Taylor had a policy of insurance in the appellant company, his widow, the appellee, being named as beneficiary. On April 30, 1913, Taylor was intentionally stabbed by one Thomas Brogan, and died on the third day of May, following. The principal issue made in the record and briefs is whether his death was caused by the wounds inflicted by Brogan or by blood-poisoning, or gangrene, that set up in these wounds soon after they were inflicted.

The policy contract stipulated that if the death of the insured resulted from bodily injuries "Effected directly and independently of all other causes through external, violent and accidental means," the company would pay the principal sum of two thousand dollars. There was a further condition in the policy that if his death resulted from wounds "intentionally inflicted upon the assured by any person, the limit of the liability of the company should be one-fifth of two thousand dollars, or four hundred dollars."

The company declined to pay the beneficiary exceeding four hundred dollars, and thereupon this suit was brought, asking a judgment for two thousand dollars, the full amount the company agreed to pay in case of his death from external, violent and accidental means.

It is doubtful if the petition states a cause of action, but in the view we have of the case, it is not important to point out the insufficiency of it. The answer pleaded that the insured came to his death by knife wounds intentionally inflicted by Brogan, and averred that under the contract of insurance the liability of the company was limited to four hundred dollars, which sum it averred it had offered to pay. It also, subsequent to the filing of its answer, offered to confess judgment for this sum and costs, with interest from the time of the death of the insured. On the trial of the case, there was a verdict and judgment for two thousand dollars, followed by this appeal.

We think the liability of the company was limited to four hundred dollars, and will briefly state the reasons for this conclusion. The evidence shows, without contradiction, that Taylor was intentionally attacked and stabbed by Brogan, whose evident purpose was to kill him, and he would almost certainly have done so except for the interference of a bystander. So, that if Taylor's death was the natural and reasonable result of the

wounds inflicted by Brogan, there is no doubt that four hundred dollars is all the company should be required to pay in satisfaction of the policy contract.

It is, however, insisted by counsel for the beneficiary that the death of the insured was not caused by the wounds inflicted by Brogan, but by blood-poisoning, or gangrene, that afterwards set up in these wounds, and it is upon the theory that this blood-poisoning, or gangrene, was an accidental, intervening cause that produced his death, that the beneficiary was enabled to recover the sum of two thousand dollars.

The doctor who attended the insured testified that he found him out on the ground where the difficulty occurred, a short while afterward, and that he had several cuts about his body, one around his neck, others in the shoulder, a few on the hand and one on the left thigh about six or nine inches long. He also said that none of these wounds was in a vital part, nor were they of such a nature as to produce death in themselves. That after washing his wounds and treating them with iodine to prevent infection, he dressed them. That the next day he visited the insured and washed and redressed his wounds with the usual applications and in the usual manner. Asked what caused his death, he said it was gangrene caused by infection, and that the infection was produced by germs that gained an entrance into the wounds. He also said that while the knife wounds were not themselves fatal, the germs that produced the infection were able to accomplish this result on account of the wounds.

It further appears from the evidence of the wife and son of the insured that on the day following the injury they unloosened some of the bandages on his wounds, especially on his thigh, with their hands, which had not been washed or cleansed, and that the insured rubbed the wound on his thigh with his unwashed hands; and the doctor said that, assuming the germicides and antiseptics had performed their proper office, the loosening of these bandages and the rubbing of the wounds would have permitted the germs to gain an entrance, and it was possible that the wounds might have become infected in this way.

It also appears from the testimony of this physician that gangrene, or blood-poisoning, is one of the consequences that might follow an open wound in the human

body, and that the insured died as a result of the blood-poisoning, or gangrene, which was caused, in the first instance, by the wound inflicted by Brogan, and that there would have been no blood-poisoning or infection of any kind except for these wounds. It is also shown by his evidence that this infection may be produced as the result of the failure of the surgeon who dresses the wounds to properly disinfect his instruments; or, in other words, that blood-poisoning, or gangrene, may set up in a wound as the result of very slight neglect or inattention, or from any cause that brings into contact with the wound some unclean object.

The son and wife of the insured testified, in substance, that two days before he died, they cut or untied the bandage around the wound on his thigh with their hands, and that he rubbed his hand over the wound.

We think from this evidence that it would be pure speculation and guesswork to say that the cause of the death of the insured independent of other causes was gangrene produced by the removing of the bandages and the rubbing of the wound. It is equally as reasonable, if not more so, to assume that the infectious condition that set up in these wounds was produced by the knife with which they were inflicted and by the unsanitary condition surrounding the deceased from the time he was cut until his death. The attending physician was not, of course, responsible for these conditions, and we have no doubt did everything he could do under the circumstances to properly dress the wounds and give to the patient such attention as he required. But, nevertheless, we are well satisfied that the evidence is entirely insufficient to show that the deceased came to his death from blood-poisoning, or gangrene, that set up from some independent cause that intervened subsequent to the infliction of the wound.

Wherefore, the judgment is reversed, and if there should be another trial and the evidence is substantially the same, the court will take the case from the jury and enter a judgment against the company for the amount for which it offered to confess judgment. In the event the case takes this course, the costs following the offer to confess judgment will be adjudged as provided in Section 640 of the code.