COVENANT.

Case 30.

# Allen *vs.* Vancleave & Kelso.

## ERROR TO THE CALLOWAY CIRCUIT.

In a suit on a warranty of soundness of a slave sold, the declarations of the slave made to the attending physician, at the time he is attending, of her feelings, of the nature, symptoms, and effect of the malady under which she was laboring at the time, held to be admissible evidence to be given to the jury on the question of soundness or unsoundness.

The opinion of the judge contains a full statement of the case, to which the reader is referred.

*James Harlan,* for plaintiff—

The issue in this case was whether the slave sold by Vancleave and Kelso to Allen, the plaintiff in error, was sound at the date of the bill of sale, on the 10th December, 1852.

1. On the trial of the case in the Circuit Court, Dr. Holt, who had attended the negro woman from the time she was taken ill, in January, 1853, until she died, in February, of the same year, was called as a witness for the plaintiff. In the course of the examination he was interrogated by plaintiff's attorney as to what the woman said to him, as to the origin of the disease under which she was laboring. The court permitted him to state all she said as to her

*then* illness, the manner of her attack, and the progress of the disease; but refused to let him state what the girl said in relation to any former illness, or the manner of the attack, or progress of the disease, or the history of her former disease. This is the first question for decision.

It may be regarded as an unsettled question in this court. The judges divided in opinion upon it in the case of *Tumey vs. Knox*, 7 *Monroe*, 88, and it will be necessary to look to the opinions of other courts.

The following is an extract from the *U. S. Dig.* vol. 12, *page* 273, *sec.* 140, as reported, of the decision of the Court of Appeals of Tennessee, in the case of *Jones vs. White*, 11 *Humphrey's Rep.*: "In an action of covenant of warranty of the soundness of a slave, the opinion of the physician who attended the deceased slave as to the character and derivation of his disease, and also of the statements of the slave made to the physician and others, as to the symptoms and effects of the disease, are competent evidence."

In *vol.* 11 *U. S. Dig.* 203, *sec.* 166, is the following: "The declarations of a slave as to his health and bodily condition, are admissible to show the effect of a blow upon his head. (*Biles vs. Holmes*, 11 *Iredell N. Car.* 16.)

In *vol.* 11 *U. S. Dig.* 203, *sec.* 198, is the following: " In an action for fraud in the sale of a slave, the declarations of the slave made at any particular time as to the state of his health at the time, are from necessity admissible in evidence. (*Roulack vs. White*, 9 *Iredell N. Car.* 63.)

It is said in *Phillip's Evidence, vol.* 1, *page* 232: "Inquiries by medical men, with the answers to such inquiries, are evidence of the state of the health of the patient at the time; such evidence is admissible from the very nature of the thing. (Refers to 6 *East*, 195.)

In *Cowan & Hill, notes No.* 446, it is said that: "In an action for breach of warranty of soundness of a slave, his declarations that he he had a pain in the side, by which the disease was detected, were holden

admissible against the defendant. (*Gray vs. Young*, 4 *McChord, S. Car.* 38.)

In the case of *Mars vs. Hill & Hays*, 10 *Missouri Reports*, 321, the court decides that declarations made by a slave to professional persons, if at the time there were indications of disease, are admissible as evidence upon the issue of soundness or unsoundness.

The counsel cannot perceive the distinction taken by the circuit judge in restricting the witness to speak only of what the woman told him of her *then* disease. In order that a physician may form a correct opinion of a disease with which a patient is afflicted, it becomes important that the physician should know the previous condition of the patient's health, the diseases with which he had been previously afflicted, symptoms, &c. Without such information, no very accurate opinion could be formed. If, therefore, the statements made to the physician by the woman, of the state of her health, are to be received at all, about which I apprehend there can be but little doubt, it seems to me that the whole statement should have been admitted.

As to the sufficiency of the evidence to authorize the verdict, I make only this remark. The number of witnesses on the part of the defendants greatly exceeded those of the plaintiff, but the greater part were negative witnesses. Their opportunities to form correct opinions as to health of the negro woman were greater, for Dr. Holt, better than all the other physicians who were examined on the part of defendants. And so far as witnesses, not physicians, speak of the woman's health, whilst she belonged to Manning, several years prior to the sale to Allen, their evidence was entitled to but little weight.

*M. Mayes*, for defendants—

It is respectfully contended that there is no error in the judgment of the Circuit Court, prejudicial to the defendants.

It is not true, as suggested by the first error assigned, that the court refused to permit Dr. Holt to give evidence of the statements of the girl, made to him whilst attending her as physician. It is true that questions were propounded to Dr. Holt as to what the girl said to him when he visited her and attended her as a physician, upon the subject of her disease, whether he did or did not come to the conclusion that the girl had chronic inflammation of the womb, from the examination he made, from the symptoms prevailing, and from what she said in relation to her disease, &c. To the answering said questions objection was made, and the court refused to permit the witness to state what the girl said in relation to any former disease, or the manner of the attack, or progress of *that disease*, or the history of her former disease; but permitted him to state all she said as to *her then illness*, the manner of the attack, and the progress of the disease. This opinion of the court was excepted to.

Thus it appears that the court did not refuse to permit the witness to give evidence of the statements made to him by the girl; but did permit the witness to detail each and every statement made by her to him, while attending on her as physician, relative to her then sickness; but refused to permit him to detail any statements of the girl in reference to any previous sickness.

But it is believed that the court did not err in excluding each and every statement made by the girl to the physician, whether in reference to her *then* illness or any other illness, under which she labored at any previous time. The statement of the patient to the physician, if legal at any time, and under any circumstances, must be the statements made at the time, and in reference to the disease under which the patient then labored, and made, too, by one who would have been a competent witness between the parties. (1 *Greenleaf* 179, *sec.* 102.) It cannot be perceived by what rule of law the statements made by a slave, in

ALLEN
*vs.*
VANCLEAVE &
KELSO.

the absence of the party against whom they are to operate, are to be received as evidence. Certainly not because of the necessity of the case, and not because they are part of the *res gesta.* *Res gesta* means a fact done, or transaction or thing past.

Slaves are not witnesses, by our laws, against the body of society. The girl, if living, could not have been introduced as a witness in this suit; much less, then, should her statements made to a physician be admitted. At most it is but hearsay evidence, and that from a person who could not be sworn in a court of justice to testify in a controversy between the parties. The question involved has been, as I conceive, settled against the admissibility of the evidence in the case of *Tumey vs. Knox,* 7 *Monroe,* 88, and 1 *Greenleaf,* 79.

By referring to the testimony of the physician, it will be seen that he formed his opinion of the disease of the girl from his own examinations, not from the statements of the girl, which was that the girl had been laboring under the disease for several months. And if he had detailed the statements of the girl, it added no additional weight to his opinion, and the plaintiff could not have been prejudiced by it. But it is insisted the court did not err in its opinion to the prejudice of plaintiff.

2. The motion for a new trial being based mainly upon the supposed error of the court in excluding all the statements of the girl, the court did not err in overruling the motion for a new trial, if it did not err in rejecting the evidence. The verdict is sustained by the evidence. Dr. Holt, the plaintiff's principal witness, says he was called to see the girl on the 26th of January, 1853; found her laboring under pneumonia and chronic inflammation of the womb; that the inflammation of the womb must have existed several months. This statement is given merely as the opinion of the witness, arrived at from the symptoms and his experience as a physician. Dr. Boas never saw the girl, but from the tes-

timony of Dr. Holt he came to the conclusion that she was laboring under chronic inflammation of the womb and pneumonia; that he had no opinion of the length of time it had existed. The bill of sale shows the sale took place December 10, 1852. Dr. Holt proves that the girl was taken ill January 26, 1853, and died February 5, succeeding. Drs. Poplin and Graham, from the statements of Dr. Holt, thought the girl was laboring under acute, but not chronic inflammation of the womb. Dr. Acre was called to see the girl with Dr. Holt; thought, from her pulse, she was dying, and made no particular examination. Other witnesses speak of her being an unusually healthy woman, and that plaintiff was well pleased with his contract, and said he would not take a thousand dollars for her. The weight of the evidence is in favor of her soundness at the date of the sale.

ALLEN
vs.
VANCLEAVE &
KELSO.

Chief Justice MARSHALL delivered the opinion of the Court—

January 8:

This action was brought by Allen to recover damages for the alleged breach of a written warranty of the soundness of a female slave, purchased by him from the defendants. The bill of sale bears date on the 10th December, 1852, and the slave died on the 5th of February following, after she had been for about two weeks under the constant attendance of a physician, who, from symptoms stated, and examinations made by him, was of opinion that she had pneumonia and a chronic inflammation of the womb, which was incurable, and which, in his opinion, must have been of several months' continuance before her death. Other physicians, who heard the statement of the first, were of opinion, from the symptoms detailed by him, that the inflammation of the womb was acute and not chronic. Upon this evidence, and that of many witnesses, male and female, proving the apparently vigorous health of the woman up to, and after the sale to the plaintiff, and his own expressions of satisfaction with his purchase, the jury found

ALLEN
*vs.*
VANCLEAVE &
KELSO.

a verdict for the defendants. And the plaintiff's motion for a new trial having been overruled, he has prosecuted a writ of error to this court for the reversal of the judgment against him, presenting, as the only question of law arising on the record, the propriety of an opinion of the court limiting the answer which the attending physician, above referred to, should be allowed to give, to two questions propounded to him by the plaintiff.

In a suit on a warranty of soundness of a slave sold, the declarations of the slave made to the attending physician, at the time he is attending, of her feelings, of the nature, symptoms, and effect of the malady under which she was laboring at the time, held to be admissible evidence to be given to the jury on the question of soundness or unsoundness.

The two questions asked : 1st. What the woman said to the physician respecting her disease, when he visited and attended her as a physician ? and, 2d. Whether he did not come to the conclusion that she had chronic inflammation of the womb, and also as to the length of time the disease had existed, from his own examination, from the symptoms he found prevailing, and from what she said in relation to her disease in answer to questions put by him while attending on her as a physician ?

The defendants having objected to the answering of these questions, the court allowed the witness to state all the woman said as to her existing illness, and the manner of her attack, and the progress of her disease ; but refused to let him state what she said in relation to any former illness, or the manner of the attack, or the progress of the disease, or the history of her former disease. To which opinion of the court the plaintiff excepted, and made it afterwards a ground of his motion for a new trial, and now urges it as a ground of reversal.

There might be some doubt whether by their own terms, the questions are not confined to what the patient said respecting the illness for which the physician was then attending on her. But they admit of a broader construction, and from the fact of an exception being taken to the restriction imposed by the court, and from that restriction having been made a ground for the motion for a new trial, it seems probable that the questions were intended to elicit answers as to the statements of the woman relating to

a previous disease, or illness. If they were not so intended and understood, they would have been satisfied by answers which the opinion of the court allowed the witness to make, and a new question would have been framed to elicit any statements as to a former illness or disease. In this view, the limitation expressed by the court had no other effect than that of restricting the answer to the terms of the questions actually put to the witness. And as no interrogatory was offered, no questions would properly arise as to its admissibility, or the extent to which it might be answered. But whatever may have been the extent of the question, we are of opinion that the court was sufficiently liberal in stating the extent to which it might be answered, and that the restriction imposed upon any further answer whether to be regarded as practically affecting the right of the party in adducing evidence, or as a theoretical opinion only, cannot be regarded as tending to the exclusion in this or any other case, of proper and legitimate testimony.

The only case in this court heretofore reported, in which the question was directly made as to the admissibility of the statements of a slave respecting his diseased condition, is that of *Tumey vs. Knox*, 7 *Monroe*, 88. In that case the court was so divided as that the majority concurred only in the opinion that improper evidence had been admitted of the statements of the slave in question. But while Chief Justice Bibb was of opinion that such statements, in the absence of the party against whom they were offered, were wholly inadmissible, the other two judges did not agree with respect to the circumstances under which, and the extent to which, they were admissible. Judge Owsley was of opinion that the declarations of a slave to different persons and at different times, relating to his condition when the declarations were made, might be admitted as parts of the *res gesta*, and as evidence bearing upon the question of a continued disease. Judge Mills was of

opinion that the declarations of a slave may some-
times constitute a part of the *res gesta*, and be proper
evidence, and as the opinion of a physician whether
the disease is temporary or chronic is often founded
upon his examination of the patient, combined with
other circumstances, it might be competent for him to
detail the reasons for his opinion, combined with his
examination.

In the case of *Marr vs. Hill*, &c. 10 *Missouri Re-
ports*, 323, to which we have been referred, the court
said that in addition to the appearances and actions
of a slave, his exclamations or declarations as to the
pains or afflictions suffered, whether made to a pro-
fessional or unprofessional person, were a part of the
*res gesta*, and they were admitted on that ground.
But the court further said that the mere declarations
of a slave that he or she was diseased, without proof
of any symptoms or appearance of disease, would be
mere hearsay, which ought not to affect the rights of
any person, and would be clearly inadmissible. This
case certainly does not sanction the evidence of such
declarations, except so far as they relate to a present
disease, but has clearly an opposite tendency, since
no mere statement of a past transaction or fact can be
regarded as a part of that transaction or fact—that
is of the *res gesta* to which the declaration relates—
but would be mere hearsay, inadmissible if the decla-
rations were made by a competent witness, and much
more when they are made by a slave, who could not,
if present, prove the fact.

The other cases referred to in the Tennessee and
North Carolina Reports, as cited in 10th, 11th and
12th U. S. Digest, go no farther than the case from
Missouri just noticed, and some of them seem not to
involve the question as to declarations made to unpro-
fessional persons. The quotations from 1 *Phillips on
Evidence*, 232, and from *Cowan and Hill's Notes*, *No.*
446, also relate to declarations as to the condition
of the person at the time. So in 1 *Greenleaf on Evi-
dence, sec.* 102, it is said, that "whenever the *bodily or*

*mental feelings* of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence," and that if natural, they are satisfactory, subject to the judgment and decision of the jury as to their being real or feigned. And further on, in the same section, he says : "So, also, the representation of *a sick person,* of the nature, symptoms, and effects of the malady under which he is laboring at the time, are received as original evidence. If made to a medical attendant, they are of greater weight as evidence, but if made to any other person, they are not on that account rejected."

This doctrine is laid down by Greenleaf without particular reference to slaves. But it is the established doctrine with respect to the admissibility of the declarations of competent witnesses in relation to their mental or bodily condition or feelings. And as their declarations are admitted as original evidence only when they relate to their feelings at the time, or to the nature, symptoms, and effect of the malady under which they are laboring at the time, and are regarded as mere hearsay, so far as they go beyond this limit, there can be no good reason for admitting evidence of the declarations of a slave to any greater extent. The question whether any declarations of a slave, with respect to his health even at the time, are admissible unless made to the attending physician, is not now presented for consideration, and we express no opinion upon it. In two manuscript opinions at the present term, such declarations to the attending physician in relation to the immediate malady under which the slave was laboring at the time, were held to be admissible on the question of soundness or unsoundness at a previous time. But they do not extend to the admission of declarations as to a previous malady or illness..

Wherefore, there being no error prejudicial to the plaintiff, in the opinion of the court, on the subject

which has been noticed, and the evidence being sufficient to sustain the verdict which has been sanctioned by the Circuit Court, the judgment is affirmed.