# North American Accident Insurance Company v. Hill's Administratrix, et al.

(Decided November 19, 1918.)

## Appeal from Campbell Circuit Court.

1. Evidence—Physicians and Surgeons—Res Gestae.—It is competent for a patient in a statement made to his physician to give his symptoms and feelings, and if he is suffering from an injury to tell how the injury occurred, which statement may be given in evidence by the physician as being a history of the case given to him by the patient, but if the statement is made at a time so far removed from the accident as to make it incompetent under the res gestae rule, the physician should not be permitted to state a narrative of the events attending the accident which was given to him by the patient, as such narrative is not necessary to enable the physician to properly understand and treat the case.

2. Insurance—Accident Insurance—Evidence of Physician.—Where one held an accident policy agreeing to indemnify his estate to the extent of $2,500.00 if death should ensue solely and only from accidental causes received while actually riding as a passenger within a railroad car on a train provided by a common carrier for passengers, in a suit upon the policy to recover for the insured's death it was error to permit the physician to state that the deceased, sixteen days after receiving the injury, stated that he had been injured on a passenger train, since the place where the accident was received threw no light upon the plaintiff's condition to enable the physician to properly understand and treat the case; and further, such statement is both self serving and hearsay.

3. Insurance—Evidence—Instructions.—Plaintiff's decedent held an accident policy conditioned as indicated. It was claimed that he received an accident coming within the purview of the policy on January 12. On January 28, sixteen days thereafter, he consulted a physician who concluded that he was afflicted with a condition known as ascites, explained by the physician to be an accumulation of fluid in the abdominal cavity, and which the physician testified could have been produced by a traumatism upon the liver caused by the accident. An operation disclosed that there was a malignant growth upon the liver, instead of fluid in the abdominal cavity, which tumor was as large as a man's head, and that it could not have been produced by the accident which occurred sixteen days before. Held, that the jury should have been instructed to find for the defendant, upon the ground that the evidence failed to disclose that death was produced solely by and as a direct consequence of the accident.

JOHN E. SHEPARD and EDWARD ST. CLAIR for appellant.

JUDSON A. SHUEY and L. J. CRAWFORD for appellees.

Opinion of the Court by Judge Thomas—Reversing.

The appellant and defendant below, North American Accident Insurance Company, issued to Charles H. Hill an accident policy by which it agreed to pay him certain named amounts for the accidental loss of designated members of his body, and to pay his estate for the loss of his life the sum of $2,500.00, "provided such loss shall result from bodily injuries inflicted through external, violent and accidental means, and solely and independently of all other causes, within thirty (30) days of the event causing such injuries," and only if such injuries shall occur "while actually riding as a passenger in a place regularly provided for the transportation of passengers only, within a railroad car, elevated, subway or interurban railroad car, street car or steamboat, provided by a common carrier for passenger service."

The insured was a traveling salesman for a wholesale hardware establishment, and on January 28, 1916, while the policy was in force, he returned to his home in Dayton, Kentucky, from a trip through the south which he had made for his employer. He was very much afflicted, and Dr. Spitzlberger, his family physician, who was called in, says that his patient was "suffering from a condition of troubled respiration and a marked swelling in the abdomen." He further says that "there was a rapid pulsation with an increased respiration and misery in his abdominal cavity, and he also complained of his right side." The patient was suffering a great deal of pain and the physician diagnosed his condition as beng one where "he was affected with the condition of ascites." Being asked what ascites is, he answered: "It is an effusion of the serum into the abdominal cavity, which is of a watery nature."

Dr. Creiwe, shown by the record to be an eminent diagnostician of Cincinnati, testified in the case, and said: "Ascites is a term which is used to signify the accumulation of fluid in the abdomen." It is explained by Dr. Spitzlberger that the accumulation of fluid in the abdominal cavity producing the ascites condition obstructs the portal circulation and causes a dropsical condition, one of the symptoms of which is a distention of the abdomen such as the insured had when first seen by the physician.

On February 2nd, 1916, the insured was taken to a hospital in Cincinnati and was there operated on by Dr. C. A. L. Reed, but the operation progressed no further than to discover the ailment with which the patient was afflicted, which was a large tumor on his liver, the size of a man's head, and which the physicians say was either sarcoma or carcinoma, both of which are malignant growths.

On February 9 the insured died. This suit was filed by the appellee, his widow, who qualified as his personal representative, to recover $2,500.00 for his death, alleging that it was produced by an accident which the deceased sustained on January 12, 1916, and which was inflicted through external, violent and accidental means, and, it solely and independently of all other causes, produced her decedent's death, and which he received while he was "actually riding as a passenger in a place regularly provided for the transportation of passengers only, within a railroad car provided by a common carrier for passenger service."

The answer traversed the allegations of the petition, and upon trial the jury returned a verdict in favor of plaintiff for the amount claimed in the petition, upon which judgment was rendered, and to reverse it the defendant prosecutes this appeal.

Many alleged errors are relied upon as grounds for a reversal, and we think at least two of them are well taken. They are (1) incompetent evidence introduced by plaintiff over the objections of the defendant, and (2) insufficiency of the testimony to authorize a recovery. Considering these in the order named: (1) Dr. Spitzlberger, who was introduced as a witness for plaintiff, in testifying concerning what the deceased said in giving a history of his case after returning from his trip, was asked: "What did he give you as the history of his case?" He was permitted to answer over the objections and exceptions of defendant and said: "That while he was boarding a train the train started off suddenly, throwing him violently, and as to him falling on the grip or the grip falling on him I don't exactly recollect; I know the grip he was carrying was the cause of his injury indirectly." By this answer the deceased himself was made to testify not only as to the way and manner of receiving his injuries, but also that they were received

while deceased was traveling upon a passenger train in a coach provided for that purpose, thus bringing the accident directly within the terms of the policy; for, according to those terms, if the accident had not been inflicted while the deceased was thus circumstanced, it would not be covered by the policy. It is a rule quite universally recognized that it is competent for a patient to give a history of his case to his physician so as to enable the latter to render a proper diagnosis and give such treatment as the affliction demands. This, however, in the instant case, required no more than that the patient should have said to the physician that he had sustained an accident wherein he fell upon his grip or the grip fell upon him, naming the part of the body affected, together with the symptoms following. It is by no means essential for any purpose that the place where the accident occurred should have been mentioned. Perhaps the statement as to the place where the accident was received might have been admissible, if made immediately thereafter so as to bring it within the familiar doctrine of the *res gestae* rule, but having been made after the lapse of sixteen days, it was clearly incompetent.

In the case of Shade's Administrator v. Covington-Cincinnati Elevated Railroad & Transfer & Bridge Company, this court had before it almost the precise question involved in the case now under consideration. In that case the administrator of Mrs. Shade brought suit against the defendant to recover for the death of his decedent, claiming that it was produced through the defendant's negligence by permitting its bridge to become dangerous through the accumulation of ice and snow, upon the passenger footway, upon which the deceased slipped and fell, sustaining the injuries from which she died. Practically the entire testimony as to how she sustained her injuries was through a statement which she made to her physician. In that case the physician was permitted to testify, *inter alia,* that the deceased told him that she fell upon defendant's bridge because of ice thereon. The court in its opinion, after stating the reason for the rule permitting the introduction of this character of testimony, said:

"For that reason the law allows the proof of what she said to her physician at the time of his examination, as part of the *res gestae*. What the injured party may

have said to any one at the time of the injury, or so immediately after it as to be regarded part of it, as being the verbal part of a continuing occurrence, would also be admitted, upon familiar grounds. What was said after the lapse of some minutes—a half hour or so in this case—to the attending physician, to aid him in determining the nature of the injury and to prescribe a remedy or treatment, is allowed as an extension of the same rule of evidence. It rests logically upon the necessity of the case. It is matter proper to be shown, and not susceptible generally of being otherwise proven. But it must stop with the necessity for it. It was necessary for the physician to know whether the patient was suffering, and where the pain was, and as to its character. It was also proper that he should know how the injury was inflicted, as upon that knowledge his treatment, in part, might depend. So it was competent to show that the patient said she had received a blow on her head, if she did say it, and how she was otherwise hurt. But it was wholly immaterial to the physician's understanding what was necessary for him to know in treating the injuries whether she fell on appellee's bridge or elsewhere, or that she fell on ice.''

As in that case, it was competent to show what the patient said as to where she sustained the accident upon her body and how it occurred, but incompetent to show that the accident occurred upon defendant's bridge and because of ice thereon, so in this case it was competent to show by the physician what the deceased said concerning the manner in which he received his accident, and the place upon his body where it occurred, together with other injuries he received, as well as the pain and suffering he experienced, but it was wholly incompetent to show that the accident was received upon a passenger train, as this could furnish no possible information to the physician enabling him to any better diagnose or treat the case. It was a self serving statement, purely hearsay, and admissible under no rule of practice known to us.

Neither does this court's opinion in the case of Omberg v. Mutual Accident Association, 101 Ky. 303, relied upon by appellee, authorize the introduction of this class of testimony, as was pointed out in the Shade case. In the Omberg case the court was careful to restrict the

application of the rule to the statements made by the patient to the physician to enable the latter to properly diagnose and treat the malady, and the court therein said: "A narrative of the events attending the mishaps would not be competent." So in the instant case a narrative of the place where the accident happened was wholly incompetent, and especially so when it contained a statement of facts essentially necessary to bring the accident within the provisions of the policy. But it is insisted that the admonition which the court gave to the jury at the close of plaintiff's testimony cured the error which we have discussed in the admission of the statement which the deceased made to the physician. That admonition says:

"On the motion of the defendant to exclude the statement of Dr. Spitzlberger detailing what Mr. Hill told him of the accident, I think what Mr. Hill told him of the nature of his injury and the mode of receiving it is competent, but not the part of the statement that speaks of what caused him to receive it and that part of the statement, I mean the statement that the fall was caused by a sudden starting of the train, is excluded from your consideration."

The only part of the statement which the court therein excluded is that part which purported to state that the accident was produced by a sudden starting of the train. The vice in the testimony did not consist of *how* the accident happened, or rather what produced it, but it consisted in the deceased stating the *place where it occurred*, since he was indemnified only against accidents occurring in that character of place. It will therefore be seen that the admonition did not reach or touch the vital error.

Briefly discussing the (2) ground for a reversal, we have seen that Dr. Spitzlberger diagnosed the case as an ascites condition, and we have seen what he and other physicians described as constituting that condition, it beng an accumulation of fluid in the abdominal cavity which he testified could have been produced by a bruise upon the liver which could have been made by the character of accident the deceased described to him, but when Dr. Reed, in the presence of Dr. Creiwe, made the exploratory incision for the purpose of discovering the cause of and relieve if possible the patient's condition,

it was found that instead of the abdominal cavity being filled with a fluid substance producing ascites, the patient was afflicted with a malignant growth upon the liver which they and other physicians say could not possibly have grown to the size of a man's head, as they found it, under six months from the time it commenced, and we do not find from the testimony of any physician who was introduced that the character of growth found could have developed from January 12, the day the accident is alleged to have occurred. If the ascites condition which Dr. Spitzlberger was of the opinion existed had been demonstrated by the operation, there might be room for contending that his testimony would have been sufficient to carry the case to the jury, but the operation developed that the patient's condition was not produced by the causes which he supposed to exist but because of entirely different ones which could not have been produced by an accident of such recent occurrence.

We therefore conclude that the evidence was not only insufficient to authorize a recovery, but that it conclusively showed that the insured's death was produced from causes wholly independent of and existing prior to the accident.

With this view of the case it becomes unnecessary to discuss or to invoke the application of the rule that where the evidence shows that the injury or damage sued for may have been produced by two or more causes, for only one of which would the defendant be liable, the jury will not be permitted to speculate as to which produced it, and which is discussed in the cases of Aetna Life Insurance Co. v. Bethel, 140 Ky. 609, and Casualty Company of America v. Taylor, 164 Ky. 786. Our conclusion is that insured's death was not produced by the accident which he sustained, even conceding that the accident did occur, and in such manner as to possibly and eventually bring about the conditions which the operation disclosed.

Defendant's motion for a peremptory instruction should have been sustained, and the judgment is reversed with directions to proceed in accordance with this opinion.