## Aetna Life Insurance Company v. McCullagh.

(Decided June 6, 1922.)

### Appeal from Henderson Circuit Court.

1. Insurance—Accident Insurance—Total Disability.—Within the meaning of the provisions of an accident insurance policy that if the injury alone totally disables the insured from the date of the accident continuously, and wholly prevents him from prosecuting any and every kind of business pertaining to his occupation, an injury which leaves the insured in such physical and nervous condition as to prevent him from doing all the substantial acts required of him in his occupation is a total disability.

2. Insurance—Accident Insurance—Total Disability.—One occupying a clerical position who, as the result of an accident, is unable to do any of the important things required of him in that position for more than fifteen minutes at a time, has suffered a total disability so far as that occupation is concerned.

3. Insurance—Accident Insurance—Excessive Use of Intoxicants.—On the issue of total or partial disability resulting from an accident under the terms of an accident policy, the court properly excluded evidence that the insured had, during the period sought to be recovered for, been guilty of the excessive use of intoxicants, there being no such issue in the pleadings.

4. Insurance—Accident Insurance—Total Disability—Expert Testimony.—Physicians who testified as experts after examining the injured man were properly permitted to express their opinions as to whether there was a total disability.

YEAMAN & YEAMAN for appellant.

JOHN L. DORSEY and JOHN C. WORSHAM for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On December 20, 1916, appellant insurance company issued to appellee an accident policy providing for certain specified indemnities in the event of accidental injury

to the insured. Shortly thereafter insured in stepping from a platform in a lodge room at Henderson sustained serious and permanent injuries which he claims continuously, permanently and totally disabled him from carrying on every kind of business pertaining to his occupation.

Appellant declined to recognize insured's claim for total disability and he instituted action to recover from it for fifty-one weeks' total disability under the terms of the policy, embracing the period from the 22nd of December, 1916, the date of the accident, to December 17, 1917, and recovered a judgment for the whole amount sued for based upon his claim of total disability, and that judgment was affirmed by this court, 185 Ky. 664.

Thereafter he instituted this action for an additional period of total disability resulting from the accident, from December 17, 1917, to January 30, 1920.

He likewise recovered a judgment under the terms of the policy for total disability for that period, but upon appeal to this court that judgment was reversed and a new trial ordered, upon the ground that the evidence was insufficient to authorize the submission to the jury of the question whether during that period there was a total disability, and after so deciding the court said:

"However, a claim for partial disability was clearly shown and had appellee requested it a directed verdict in his favor should have gone, to the extent warranted by the policy for a partial disability. Upon a retrial, the evidence being the same, this should be the order, but if other evidence is introduced the court will submit the case under proper instructions not inconsistent herewith."

Upon the retrial in the circuit court, the court again submitted in its instructions the right of the plaintiff to recovery for a total disability under the terms of the policy, and the company being dissatisfied with a verdict for the total amount based on that instruction, has again appealed.

Obviously the controlling question is whether the evidence on the last trial is the same, or substantially the same, as it was on the first trial; for if it was, the opinion on the former appeal must be controlling, and it was the duty of the trial court to have directed a verdict, as therein indicated. On the contrary, if the evidence heard on the last trial on that issue so far supplemented or added to that heard on the original trial as to justify

the submission to the jury of the question whether during the period involved there was a total disability resulting from the accident, then it was the duty of the trial court to do as it did and submit that question to the jury. Appellee was the secretary to his uncle, who was financial secretary of the American Sunday School Union. His duties were to go to the postoffice about four times a day to take and receive mail; to go to the bank about twice a day; to file orders for books; to keep a record of the contributors to the Sunday school fund and their names and addresses; to enter in a cash book all receipts and disbursements; to keep all the books, including four large ledgers having different accounts in them; to acknowledge the receipt of funds, and to keep up with a large correspondence, involving the writing of an average of something like one hundred letters a day, although many of those letters were what might be called "form" or "circular" letters.

The provisions of the policy, dealing with payments for total disability and payments for partial disability, are as follows:

"Total disability. A. If such injuries do not result in any of the losses provided for in part 1, but alone totally disable the insured, that is, from date of accident continuously and wholly prevent him from prosecuting any and every kind of business pertaining to his occupation, the company will pay the sum of twenty-five dollars per week so long as he shall live and suffer such disability, and

"Partial disability. B. If such injuries do not totally disable the insured, as above, but alone partially disable him, that is, from date of accident or immediately following a period of total disability as above defined, continuously and wholly prevent him from performing one or more important daily duties pertaining to his occupation, the company will pay one-half of the amount per week payable for total disability for the period of such partial disability, but not for more than twenty-six consecutive weeks."

On the former trial only two witnesses testified for the plaintiff, the plaintiff himself and the doctor who had attended him after the injury.

On that trial the evidence showed appellee to be suffering from ankylosis; that the injured leg was shorter than the other thus compelling him to use crutches; that from the hip to the ankle was practically one bone, the

only elasticity being at the ankle; that owing to a general infection in the leg an attempt to amputate it might produce blood poisoning; that plaintiff could not walk any great distance at one time and that he had not performed any of the duties of the office since his injury; that because of his inability to carry books or heavy packages of mail or to make regular trips to the postoffice or the bank, and the fact that he could not sit at a table nor stand at a desk for any considerable length of time and could not go out in bad weather, he claimed to have sustained injuries of a permanent and total nature so as to entitle him to the maximum benefits under the total disability clause of the policy.     It showed appellee admitted he had not undertaken to do any banking for the uncle since the injury, although he went to the bank to attend to his personal business; that when the weather was good he made daily trips to town, a distance of a few blocks; that he was a regular patron of the picture shows and from there he generally went to a club for an hour or so before going home, and that he had made no effort to see how much, if any, work he could do since the accident. The evidence showed that defendant had made no effort since December, 1917, to do the office work, and the opinion says he could not know whether he could substantially perform the duties of the office when he had made no test of his ability along that line; and it is observed that one who can go to the postoffice, bank and other places on personal business, walk a number of blocks to town once a day, spend an hour or two almost every day at a picture show and an hour at a club, cannot be said to be totally disabled from performing the clerical duties such as appellee attended to prior to his injury.     It was not disputed that appellee's injury was painful, serious and permanent, but the inquiry was addressed to the effect it had upon his ability to perform his customary duties.     It was admitted he could not perform them as well or with the same celerity as formerly and the opinion then holds the evidence was insufficient to authorize an instruction on total disability, and reverses the judgment for that reason.

On the last trial, however, not only did plaintiff and his physician who attended him after the injury testify, but the uncle who employed him as secretary and two other physicians who had examined him, each of whom had been an examiner for the draft board and one of them a member of the pension board.

·., While the evidence of plaintiff himself was in only one material respect different from what it was upon the first trial, it went much more into detail and discloses much more accurately his physical condition resulting from the accident. In substance he states that the accident happened on the 22nd of December, 1916; that Dr. Wilson was called and treated him; that he remained in bed until the following July; that an infection or blood poisoning developed in his leg and there was required six incisions at different times thereon; that about July, by the use of two crutches, or a crutch and a cane, he began to walk for short distances and continued to do so until October; that since October, 1917, there had been no improvement whatever in his condition; that the leg from the hip to the foot is one bone and there is no flexibility whatever at the knee and very little at the ankle; that the knee itself is much enlarged and between the knee and the ankle an eczema has developed which at times is very irritating; that the right leg is some two inches shorter than the other and because of the lack of flexibility at both the knee and ankle only the ball of the foot can be put to the floor when he stands or walks, and that when sitting down only the heel can touch the floor; that he has no use whatever of that leg, and even slight use of it results in pain; that it swells and at times he cannot bear even a sock on the foot, and the only time he is not in pain from it is when he is in bed; that he used two crutches or a crutch and a cane at all times during the period sued for and that the shortness of the right leg had nothing to do with their use, but he used them because he could not stand unsupported upon the leg over which he has no control; that if the shortness was the only trouble he could stand upon it easily; that he is compelled to stay in bed from twelve to fifteen hours every day and that is the only way he can get any relief from the pain.

Although he had testified as recited in the former opinion he had never tried to perform any of the duties of secretary since the injury, he testified on the last trial he had tried, and that it was impossible for him to handle the ledgers necessary to be handled in the keeping of his uncle's books; that he was unable to sit at a typewriter because his leg got very numb and it was very painful, and that when he tried it he lost control of it; that when he tried to sit at a desk and post the books his leg would become very numb and swell and the pain would make him so nervous he would have to quit and lie down; that

several times during the period sued for he had tried to get out the letters for one day but found he could only get out five or six, and he had likewise tried to make entries in the books and make out certain reports but that his uncle had to always finish the job.

These statements on the last trial, while apparently in conflict with his evidence on the former trial, are corroborated by his uncle, who was introduced on the last trial. The uncle's testimony was:

"He has tried about half a dozen times, and would work about fifteen minutes, and his hand would begin to shake like a man with the palsy, and his leg would begin to jerk and you could see he was suffering terribly, and after making that effort I saw the thing was impossible."

"Q. Have you ever seen him try to make out a report like you have exhibited here? A. He could not work that, his hand would get too nervous.

"Q. He has not been in your employment since December 22, 1916? A. I have not paid him a cent, no.

"Q. Why has he not been in your employment? A. He could not do the work. If a man can only work fifteen minutes and has to lie down, the show is over."

The two doctors, who had not testified on the former trial, went into detail as to the condition of the appellee as the result of the accident, and they, together with Dr. Wilson, each testified in substance that because of his physical and nervous condition resulting from this accident, he could perform no important part of the duties as secretary to his uncle for any great length of time; that he might write a letter or two a day in longhand or a letter or two a day on the typewriter, but as to filling such a clerical position he was totally unable to do so.

It is very apparent that the evidence on the last trial was such as to require the trial court to submit the question whether under the terms of the policy there was a total disability, if the term "total disability" as used in such a policy is such disability as will prevent the assured from doing all or any of the substantial things required in his occupation. Surely there was evidence that appellee as a result of his injury was unable to carry the heavy mail to and from the postoffice; surely a cripple who must walk either on two crutches or one crutch and a cane cannot efficiently perform the duties of a secretary who is required to go to the bank at stated periods of the day; surely there was evidence showing that his nervous con-

dition and his physical condition resulting from the injury were such that he could not handle the heavy ledgers necessary to perform his duties in bookkeeping; surely a secretary or clerical assistant who because of his physical or nervous condition can only write four or five letters a day when frequently his duties require the writing of one hundred, cannot perform in any substantial sense his duties in that respect.

The testimony of the uncle is that he had tried to do all these things and that after trying upon half a dozen occasions for a period of fifteen minutes he would be required to give it up and go and lie down, and the question is whether under the terms of the policy in question that is a total disability; that is, have the injuries continuously and wholly during the period in question prevented the appellee from prosecuting any and every kind of business pertaining to his occupation.

In the case of National Life and Accident Insurance Company v. O'Brien, 155 Ky. 498, there was an accident policy undertaking to indemnify the assured:

"Against total loss of time resulting directly and independently of other causes from bodily injuries effected through external, violent and accidental means, and which wholly and continuously from date of accident, disabled and prevented the insured from performing every duty pertaining to any business or occupation."

This court in that case held that the disability would be total where it was such as to prevent the assured from doing all the substantial acts required of him in his business.   See also Hartford Accident & Indemnity Company v. Davis, 184 Ky. 487; Fuller on Accident and Employers' Liability Insurance, page 296.

If there had been no other additional evidence offered on the last trial except that of the uncle who employed the appellee as his secretary, it would have been sufficient to authorize the court to submit that question to the jury. Surely one occupying a clerical position who has in an accident received such injuries as to prevent him from doing any of the important things in that position for more than fifteen minutes at a time has suffered a total disability so far as that occupation is concerned.

It is urged for appellant that the court erred to its prejudice in sustaining exceptions to evidence offered by it to the effect that during the period sought to be recovered for appellee had been guilty of the excessive use of intoxicants.  The theory, evidently, upon which this

evidence was offered was that appellee's physical condition had not resulted wholly from the accident but was at least partially due to the excessive use of intoxicants. The trial court, however, properly excluded this evidence, for the reason appellant made no such issue in its pleadings and did not therein seek to avoid liability on the policy because of any such excessive use of intoxicants. If the defendant sought to defeat a recovery because plaintiff's physical condition had been brought about wholly or partially by the use of intoxicants it was necessary for it to make that issue in its pleadings. Vicars v. Aetna Life Insurance Company, 158 Ky. 1; Edge v. Ott, 151 Ky. 672.

Clearly the objection of appellant to the expression of opinion by the physicians as to appellee's total disability were properly overruled. The physicians were expert witnesses and had each examined the appellee, and each went into detail with reference to his injuries and clearly their expert opinion as to the nature and extent of his injuries were competent. Ford v. Providence Coal Company, 124 Ky. 517.

The instructions are not complained of, and we are of opinion that under the evidence on the last trial the court properly submitted the issues, and the judgment is therefore affirmed.