## Equitable Life Assur. Soc. of United States v. Fannin.

(Decided June 7, 1932.)

(As Modified Nov. 15, 1932.)

WILLIAM MARSHALL BULLITT, EUGENE B. COCHRAN, LEO T. WOLFORD, BRUCE & BULLITT, H. R. DYSARD and DYSARD & TINSLEY for appellant.

VINSON & MILLER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

From a judgment of the Boyd circuit court for $1,600 in favor of Laura L. Fannin, beneficiary in two insurance certificates issued to James W. Fannin by the Equitable Life Assurance Society, hereinafter called the society, under its group policy to the American Rolling Mills Company, the society has appealed.

The master policy issued to the American Rolling Mills Company, hereinatfer called the company, contains a total and permanent disability provision which in part reads:

"If proof shall be furnished the Society that any employee insured under this policy has before having attained the age of 60, become wholly dis-

abled by bodily injuries or disease, and will be wholly and presumably permanently prevented thereby for life from pursuing any and all gainful occupation, the Society will pay six months after receipt of such proof in full settlement of all obligation under the said policy pertaining to such Employee. * * *''

It also contains special provisions which so far as pertinent read:

''1. The insurance upon the life of any employee covered by this contract shall continue only so long as such person remains in the employment of the Employer. All liability and obligation of the Society with respect to any such employee shall cease and determine immediately upon the termination of such person's employment with the Employer, without regard to the cause of such termination, except that * * * total disability under the conditions named below, shall not constitute termination of employment within the meaning of this clause * * * in case of the termination of the employment for any reason whatsoever the employee shall be entitled to have issued to him by the Society, without further evidence of insurability and upon application made to the Society within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance. * * *

''6. Upon termination of employment as shown by the Employer's records, the insurance upon the life of any employee terminates automatically, unless continued under the individual conversion option. * * *''

The certificates issued to insured contained in effect the same provisions as those quoted from the master policy; there being a slight difference in wording which in no way affects the meaning.

In her petition, appellee and plaintiff below set out the provisions of the certificates issued to her husband, the insured, and filed them with her petition. She alleged that while in the service of the company the insured became afflicted with pulmonary tuberculosis and

being thereby wholly disabled to longer perform the duties of his employment with the company and while the two contracts were in full force and effect he left its service and employment on August 17, 1929, and died from tuberculosis on September 14, 1929. It is further alleged that "she has made demand upon the defendant for payment of the amounts due and owing to her under the aforesaid contract of insurance, and defendant has declined to recognize any liability thereunder."

By the first paragraph of its answer, the society denied that while in the service of the company the insured became afflicted with pulmonary tuberculosis or became wholly disabled or unable to longer perform the duties of his employment with the company.

In a second paragraph, the answer set out the provisions of the policy hereinbefore quoted, and, after quoting the latter provision, it is alleged in substance that on August 16, 1929, the insured, upon two days' notice to the company, voluntarily terminated his employment and ceased to remain in its service; that the company thereupon recorded the termination of such employment upon its records and upon its insurance ledger and gave notice of such termination to the society. It is further alleged that the insured did not upon such termination of his employment or at any time thereafter apply to the society for life insurance or pay to it any premium for such policy, and further that, while insured under the group policy, James W. Fannin did not become wholly or permanently or at all disabled so as to be prevented for life from pursuing any and all gainful occupation. The issues were completed by reply, and a trial before a jury resulted in a verdict upon which the judgment appealed from is based.

As grounds for reversal, counsel for appellant argue five points, but, since the first and third challenge the sufficiency of the evidence to take the case to the jury or to support the verdict, they will be treated together.

The first certificate of insurance was issued to James W. Fannin in 1925, and he continued in the employment until about August 17, 1929. There is, however, evidence that during this time he secured several months' leave of absence upon the advice of his phy-

sician and went to Arizona for his health. For about two weeks after he ceased working for the company insured worked at a filling station of the Standard Oil Company at Ashland. On September 6 he left his home to visit a friend, Frank Keller, at Muskegon, Mich. Some of the employees at the American Rolling Mills Company testified that, when Fannin quit work there, he told them he was going to Michigan to work in oil fields. It is impracticable as well as unnecessary to give a detailed statement of all the evidence bearing on the physical condition of Fannin before he left the employment of the company. We think it sufficient to give a summary of the evidence bearing on that question.

For appellee, it is made to appear that while Fannin was at work for the company from 1924 to August, 1929, he lost 40 or 50 pounds in weight, looked badly, was short of breath, coughed continuously, spit blood, had night sweats, low blood pressure, often in the morning subnormal temperature with a high temperature in the evening. Dr. Hunter testified that he treated him for about five years before his death, and during that time he was suffering with pulmonary tuberculosis and tubercular bronchitis. The doctor testified that he secured from Mr. Fannin such family and other history as was necessary to make a diagnosis of his trouble, and he was permitted to testify as to the history given him by the patient, including statements that he was a cook in a tubercular camp while in the service of the United States in the World War. The doctor further testified that he advised the trip made by insured to Arizona because that climate was good for pulmonary troubles. It is further in evidence that some time before leaving the employment of the company and at all times thereafter appellee was weak and anæmic to such an extent that the least exertion would cause labored and difficult breathing, smothering, and trembling of the arms and legs. On his way to Michigan he had severe hemorrhages from his lungs. Drs. Pangerl and Chapin, who were called to treat him in Mr. Keller's home at Muskegon, gave as their opinion that he had an advanced case of tuberculosis. He was later removed to the Muskegon County Sanitorium where he died September 14. Dr. Bartlett, the superintendent and medical director of the sanitorium, testified that he made a microscopic examination of the patient's sputum and

found it to be negative, and he gave as his positive opinion that Mr. Fannin died of lobar pneumonia.

For the society, it is shown that during the year 1929, and before Mr. Fannin quit work on August 17, he was absent from his work only one day, which was in June, and that he worked one Sunday in January, one in February, two in March, two in May, two in June, and two in August. During the last thirty days with the company he worked three full Sundays, and on at least two different days he worked for eleven hours. The company employed a physician, Dr. W. H. Rice, to conduct a dispensary and give medical advice and treatment to its employees free of charge, and he stated that after Mr. Fannin came back from Arizona in March, 1928, he was given a complete examination but no treatment, and, so far as he knew, there was nothing wrong with his health from that time until he quit work.

While reference is made by counsel for appellant to provision that the insurance shall automatically cease and determine upon the termination of the employment, it is not contended that appellee is precluded by that provision, if at the time insured left the employment of the company he had become wholly and presumably disabled for life so as to be prevented from pursuing gainful occupation. They do, however, insist upon such a circumscribed and literal interpretation of the disability clause in the contract as would render it inoperative if the insured at the time he quit the service of the company was physically able to do any work whatever for gain. Such a narrow construction is entirely out of harmony with decisions of this court. Henderson v. Continental Casualty Co., 239 Ky. 93, 39 S. W. (2d) 209, and cases therein cited; John Hancock Mutual Life Ins. Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004.

Clearly the evidence was sufficient to make an issue for the jury on the question whether before the termination of his employment with the company Mr. Fannin became wholly and permanently disabled by bodily disease within the terms and meaning of the disability provisions of the contract.

As a second point, it is argued that, under the terms of the policy, proof of total disabilty was a condition precedent to the payment of any sum due under the disability provision, and that, since appellee neither

alleged or proved that she ever furnished such proof, the court should have directed the jury to find for appellant. It is alleged in the petition as hereinbefore pointed out that appellee made demand upon appellant for payment of the amount due her under the contract of insured, but that it declined to recognize any liability thereunder. The society made no motion to require the allegations to be made more specific, and made no denial in its answer and no issue on the question of proof or notice of disability. In such circumstances, it will be treated as waived. National Life & Accident Insurance Co. v. Hedges, 233 Ky. 840, 27 S. W. (2d) 422; Federal Life Insurance Co. v. Holmes' Committee, 232 Ky. 834, 24 S. W. (2d) 906; Continental Casualty Co. v. Mathis, 150 Ky. 477, 150 S. W. 507; Brady v. Mutual Benefit Department, 215 Ky. 177, 284 S. W. 1045.

As the judgment must be reversed because of error in instruction, the fourth point discussed by appellee, we shall, before discussing that, pass to the fifth point, which calls in question the competency of certain evidence admitted on behalf of appellee.

It is asserted that the court erred in permitting Mrs. Fannin, the beneficiary, to testify about transactions with her husband. It is complained that Mrs. Fannin was permitted to state that her husband went to work for the company in the spring of 1924, and for several months prior had been in California for his health. While there is merit in the contention that this evidence was incompetent and should not have been admitted (North American Accident Insurance Co. v. Caskey's Adm'r, 218 Ky. 750, 292 S. W. 297), the judgment would not be reversed for that reason, because a number of other witnesses testified to the same facts, and it was therefore not prejudicial.

Further argument is made that the court erred in permitting Mr. McWharter, a layman, to testify as to the physical condition of Mr. Fannin, and to state that "he had all the indications of a man with tuberculosis to me." Appellant is not in position to raise this question, since there was no objection or exception to the introduction of the evidence. And in this connection attention may be called to the prevailing rule that lay witnesses may testify as to the apparent vigor, strength, and physical condition of another person and as to the

presence or absence in such person of symptoms indicating forms of disease so common and well understood as to be within the knowledge of a layman. But the evidence of a layman should be confined to facts within his knowledge and not permitted to extend to matters of opinion, since he cannot diagnose diseases or give expert evidence with reference thereto. North American Accident Ins. Co. v. Caskey's Adm'r, supra; Grand Lodge, Brotherhood, etc., v. Johnson, 228 Ky. 669, 15 S. W. (2d) 499; Sovereign Camp, W. O. W., v. Morris, 212 Ky. 201, 278 S. W. 554.

It is further insisted that the court erred in permitting testimony that Fannin had no property or income other than from his own work. No doubt this evidence was introduced to meet the contention of appellant that appellee did engage in work after he left the employment of the company and therefore recovery could not be had under the terms of the policy. Evidently its purpose was to show that defendant worked as a matter of necessity. The right of recovery in this case is made to depend upon the physical condition of insured and not upon his financial condition or income. We are constrained to hold that this evidence was incompetent and should not have been admitted.

It is further argued that the court erred in permitting Dr. Hunter to testify as to the history Fannin gave of his case. Statements made to a physician by a patient relating to matters which are necessarily important for him to know in order that he may make a correct diagnosis and render proper and effective treatment are competent, and may be admitted in evidence. Steele Coal Co. v. Vanover, 209 Ky. 148, 272 S. W. 418; Mass. Bond & Ins. Co. v. Duncan, 166 Ky. 515, 179 S. W. 472; North American Accident Ins. Co. v. Hill's Adm'x, 182 Ky. 125, 206 S. W. 170; Shade's Adm'r v. C.-C. E. Ry. & Transfer & Bridge Co., 119 Ky. 592, 84 S. W. 733, 27 Ky. Law Rep. 224; Omberg v. U. S. Mutual Association, 101 Ky. 303, 40 S. W. 909, 72 Am. St. Rep. 413, 19 Ky. Law Rep. 462.

Practically all criticism made of the instructions given by the court is directed at instruction No. 2, which defines words quoted from the disability clause as used in other instructions. The instruction attempts to embody a number of definitions of total disability as

contained in cases dealing with policies with similar provisions, but is more or less argumentative in its nature, and calculated to be confusing rather than helpful to a jury. It improperly defines the words "wholly disabled," etc., as meaning a reasonable and substantial inability to obtain and hold employment, and is clearly erroneous in its reference to the effect of evidence as to labor performed by insured under pressure of necessity. Much that is contained in this instruction might constitute proper and legitimate argument to a jury, but should be omitted from the instructions. On another trial, the court should, in lieu of the instruction given and in defining the words quoted from the disability provision in the contract, instruct the jury, in substance, that, as used in the instructions, they mean inability to do and perform in a reasonable and practical way all material acts in the pursuit of the occupation or employment of the insured, but do not mean absolute helplessness or entire physical disability. With this modification, instructions as given correctly embody the issues made by pleading and proof. It is most earnestly argued by counsel for appellant that the court erred in not giving instruction E offered in its behalf to the effect that, if insured became totally and permanently disabled after the termination of his employment on August 17, 1929, the jury should find for appellant. Manifestly the court did not err in this particular, since the jury could not find for appellee unless they believed from the evidence that the alleged disability of insured occurred prior to the time he left the employment of the company. That was the only issue to be presented to the jury, and it is properly presented under the instructions given with instruction No. 2 modified as hereinbefore indicated.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.