# Horn's Administrator v. Prudential Insurance Company ·of America.

(Decided Oct. 10, 1933.)

138

SHUMATE & SHUMATE for appellant.

H. E. HAY, R. W. KEENON and C. S. LANDRUM for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

Sid Horn, deceased, as an employee of the Louisville & Nashville Railroad Company was insured by the Prudential Insurance Company of America under a group policy. For several years before January 19, 1931, he had suffered with varicose veins, but his affliction did not incapacitate him to perform his work as a car repairer. On that day a heavy car door fell upon and severely mashed one or more of his toes. He was unable to return to work the next day, and, according to the contentions of his administrator, from that time until his death on November 11, 1931, he was permanently and wholly disabled so that he, and after his death his estate, became entitled under the policy to the benefits in such cases provided.

Suit was filed by Horn's administrator, who claimed at first the right to recover the stipulated sum on account of his death. By an amendment of the pleadings the claim for death insurance was abandoned and the right to recover judgment was rested solely upon the total and permanent disability provision of the policy. At the conclusion of the introduction of evidence, the trial court directed a verdict for the insurance company. The appeal by the plaintiff presents the propriety of that action, and as a secondary question the competency of certain evidence held by the court to be incompetent.

The certificate of insurance issued to the insured employee, and which depended upon the master policy, stipulated, inter alia:

"Total and Permanent Disability

"If the said employee, while less than sixty years of age, and while the insurance on the life of

said employee under said Policy is in full force and effect, shall become totally and permanently disabled or mentally incapacitated to such an extent that he or she by reason of such disability or incapacity is rendered wholly, continuously and permanently unable to perform any work for any kind of compensation of financial value during the remainder of his or her lifetime, the amount of insurance payable at death from natural causes will be paid to said employee in monthly installments during two years, the first installment to be payable immediately upon receipt by the company of due proof of such disability or incapacity; in accordance with the provisions of said Policy. The disability benefits will be granted subject to cessation, in accordance with the provisions of the Policy, should such disability or incapacity prove to be temporary and not permanent. The entire and irrecoverable loss of the sight of both eyes, of the use of both hands, or of both feet, or of one hand and one foot, will be considered total and permanent disability of incapacity within the meaning of the provisions of said Policy. Payments under this provision will be in addition to any Special Disability Benefit that may be payable for loss of limbs or eyesight as shown in the schedule on the first page hereof."

It is to be noted that no specific cause for the disability is stipulated. The contract was to pay the indemnity if and when the insured should reach that condition without regard to the cause. The amount payable for natural death and consequently for total and permanent disability is $2,000. Other provisions as to accidental or natural death are not material in this case.

In its answer the defendant admitted that varicose veins with which the insured suffered "gave him material trouble and seriously impaired his ability to perform the duties pertaining to his occupation as an employee" of the railroad company. He had been working for that company about ten years, and had carried the insurance since July 1, 1925. As stated above, on January 19, 1931, a car door weighing about 190 pounds fell on his foot and mashed it. The next morning his foot was swollen, and shortly thereafter it became twice its normal size. Immediately after the injury his leg

to the knee became considerably swollen also. He continued to treat his foot, but his condition grew worse. He walked lame, and required a cane until he was put to bed in August. In September he was taken to a hospital, and died on November 11th. According to several lay witnesses, after suffering the injury Horn was unable to work; in fact, he did nothing except to help put on some building paper and assist in laying some flooring for an individual.

The testimony of two physicians was offered, but the court sustained objections to most of it. The excluded portions are here as avowals. Since it is the view of this court that the evidence was competent, we shall consider it in weighing the record upon the question of its sufficiency to take the case to the jury.

Dr. Edwards treated Horn from August 18th to September 10th. The patient gave as part of the history of his case that he had been injured by the door falling on his foot and bruising and wrenching his knee, and that he had gradually grown worse. He had some varicose veins and phlebitis or inflammation of the veins. The blood clotted in the veins around the knee and had to be drained three times. It was necessary to keep the patient under the influence of opiates until this was done and temporary relief thus obtained. The doctor stated that if one suffering with varicose veins should have an injury and it should become infected the circulation would carry the toxins into the injured parts and infect them. From an examination of the patient and the history of the case given by him the doctor expressed the opinion that the injury which he had received caused his death. In addition to presenting his deposition and having most of it rejected, the plaintiff called Dr. Edwards in person to testify. Objection was sustained to the hypothetical question which described Horn's accident and condition as disclosed by other witnesses and asked for an opinion as to whether or not he was able to work or perform the duties as a car repairer from the date of injury. The doctor's answer appearing as an avowal was, "I don't think he was." The witness stated he was not able to work when he saw him, which was in August.

Dr. Robinson gave a deposition in which he testified that he treated Horn at the infirmary in Richmond from

September 12th until his death. He described his condition and its development into "a general blood stream infection from which he died." He testified that the cause of his death was this infection which originated in his varicose veins. The court sustained objections to questions asking what history the patient had given him, and to a hypothetical question seeking the doctor's opinion as to the cause of his death. He was not permitted to testify as to the effect of bruises upon varicose veins and similar technical testimony. The answers tend to support the claim of a physical condition proving total and permanent disability.

The foregoing is the substance of the evidence offered by the plaintiff. We may now notice that of the defendant.

Dr. Snowden, the railroad company's regular physician, treated Horn for a bruised and fractured bone in his toe, as he testified, from the time he was injured until February 7th when it seemed to be healed. A week or two afterwards Horn came to his office and said he was ready to go back to work and had him fill out some sick or accident insurance papers (which were filed with another company), and he considered him able to go back to work. He was treated at this time only for the injury to the toe, and no examination of his legs was made, as he made no complaint. The doctor never noticed any varicose veins or anything else wrong with him. The foreman under whom Horn had worked testified that he laid off the day after his toe was mashed. Three days thereafter he was laid off by the company on account of the reduction in forces. About February 10th or 12th, Horn reported and said he was in need of and able to work. He was told that he had been cut off, but that his name would be put on the "extra board." There was another reduction in force and his name was taken off that list.

It seems to us that the evidence was sufficient to authorize the submission of the question of permanent and total disability according to the conditions of the policy construed as similar terms have been defined in numerous cases. Continental Casualty Company v. Mathis, 150 Ky. 477, 150 S. W. 507; Henderson v. Continental Casualty Company, 239 Ky. 93, 39 S. W. (2d) 209; John Hancock Mutual Life Insurance Company v.

Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848; Columbia Casualty Company v. McHargue, 246 Ky. 93, 54 S. W. (2d) 617; National Life & Accident Insurance Company v. Bradley, 245 Ky. 311, 53 S. W. (2d) 701; Equitable Life Assurance Society v. Fannin, 245 Ky. 474, 53 S. W. (2d) 703, and the authorities cited in those cases.

In connection with other defenses interposed and claimed to be sufficient, consideration must be given to the affidavit of A. J. Pharr, comptroller of the Louisville & Nashville Railroad Company, which was by agreement read as his deposition. His office is the intermediary agency between the insurance company and the insured employees. The portions of Mr. Pharr's testimony material to the present issues are those proving the provisions in the master policy that the insurance should determine and cease upon the termination of the employment with the railroad company, subject to a right of conversion into other policies, and relating to the payment of premiums. Premiums had been paid on Horn's policy from July 1, 1925, until January 31, 1931. Had Horn paid to the railroad company $1.45 for the February premium, the company would have paid $3.09 as the total premium for that month. Since he did not, no further premiums were paid, and the termination of Horn's policy was reported to the insurance company.

The insurance company argues that its liability under the policy ended with Horn's release from the service of the railroad company and because of his failure to pay premiums thereafter. If Horn became totally and permanently disabled upon the day he received the injury to his foot, although his previous physical condition may have been the contributing cause, he at once became entitled to the indemnity promised him by his contract. The situation is just the same as though he had died that day and claim were being made for the indemnity provided for death through a natural cause. His right became fixed then. Equitable Life Assurance Society v. McDaniel, 223 Ky. 505, 3 S. W. (2d) 1093. It would be as anomalous to require a continuance of premium payments thereafter as it would be to require them after death. The premiums already paid carried the policy 15 days beyond the date of his injury, when it is claimed he became totally and per-

manently disabled, and continued so until his death. Premiums were no longer due. This policy had matured so far as this subject of indemnity is concerned by reason of the happening insured against. McGovern v. United States (D. C.) 294 F. 108. A subsequent lapse of the policy in other respects could not operate as a release of the company for any liability on account of total disability which had arisen prior to that time. Illinois Bankers Association v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379. Provisions in the policy which automatically canceled the insurance upon his termination of employment could not under these circumstances become applicable. Equitable Life Assurance Society v. Fannin, supra. Of course, it would be different if his total and permanent disability arose after the policy lapsed.

Liability is denied also because there was no proof or notice of disability given the company. The answer to this contention must be that the contract so far as this record discloses requires none within any specified time as a condition precedent to recovery. It is provided that the first installment of indemnity will be "payable immediately upon receipt by the company of due proof of such disability or incapacity." Time for proof was not of the essence of the contract. Metropolitan Life Insurance Company v. Carroll, 209 Ky. 522, 273 S. W. 54. The insurance company received through the railroad company a notice of Horn's death, to which was attached the certificate of his attending physician. Some of the circumstances were reported, and the doctor certified that Horn had been incapable of engaging in any kind of gainful work since he first saw him. This report and notice appears to have been received by the company in February, 1932. Moreover, liability under the policy was then denied, and it must be held that this constituted a waiver of further notice and proof. Continental Casualty Company v. Mathis, supra; Federal Life Insurance Company v. Holmes' Committee, 232 Ky. 834, 24 S. W. (2d) 906; John Hancock Mutual Life Insurance Company v. Cave, supra.

Finally, it is contended that a directed verdict was proper because the pleadings did not warrant a submission to the jury of the issue of disability. As stated, this issue was raised by an amended petition. A demurrer to it was overruled. The original petition and

other amendments had been put to the same test and found sufficient. The court ruled that the plaintiff should elect whether he would rely upon this claim for total and permanent disability or the claim for death, and he had made an election. While the pleadings are probably not technically sufficient, after having been once held good, it would be eminently unjust to put the plaintiff out of court finally upon that ground without giving him an opportunity to meet the objections of his adversary. An amendment will be in order upon a return of the case.

In view of another trial, we turn to the question of the competency of the evidence. It was competent for the doctors to testify to so much of the history of the case given by the patient as related facts necessary for a proper diagnosis and treatment, such as the apparent cause of his existing physical condition, the progress of the disease and the injuries, and the like. But the statements as to his ability or disability to work and others of a self-serving character tending to fix liability for his condition are not admissible. Allen v. Vancleave, 54 Ky. (15 B. Mon.) 236, 61 Am. Dec. 184; Chesapeake & O. Railway Company v. Wiley, 134 Ky. 461, 121 S. W. 402; Louisville & N. Railroad Company v. Scalf, 155 Ky. 273, 159 S. W. 804; Massachusetts Bonding & Indemnity Company v. Duncan, 166 Ky. 515, 179 S. W. 472; Valentine v. Weaver, 191 Ky. 37, 228 S. W. 1036; North American Acc. Ins. Co. v. Caskey's Adm'r, 223 Ky. 600, 4 S. W. (2d) 383; Equitable Life Assurance Society v. Fannin, supra; Chesapeake & O. Railway Company v. Hay, 248 Ky. 69, 58 S. W. (2d) 228. Particular notice may be taken of the facts related to a physician and held to be admissible in a suit to recover under an accident insurance policy set out in North American Accident Insurance Company v. Hill's Adm'x, 182 Ky. 125, 206 S. W. 170; and the same case upon a second appeal, styled Hill's Adm'x v. North American Accident Insurance Company, 185 Ky. 520, 186 Ky. 273, 215 S. W. 428. It is competent for the physicians to testify as to the physical condition of the patient as they found it to exist. Lexington Railway Company v. Woodward (Ky.) 118 S. W. 965; Stearns Coal & Lumber Company v. Williams, 177 Ky. 698, 198 S. W. 54. They may also give their expert opinions as to the nature and extent of his infirmities, their effect, and as

to the degree of his disability. Ætna Life Insurance Company v. McCullagh, 195 Ky. 136, 241 S. W. 836; Couch's Cyclopedia of Insurance Law, sec. 2196; Jones on Evidence, sec. 1345; Cf. C. N. O. & T. P. Ry. Co. v. Ross, 219 Ky. 824, 294 S. W. 460. The hypothetical questions propounded appear to be competent. Physicians, regarded as experts, upon a proper interrogation of that character, may express an opinion upon matters of this kind, such as whether the subject was in good or bad health, or was totally and permanently disabled.

While the disease or affliction with which the insured suffered, or the medical treatment he received, or the cause of his death, were not themselves material, all of those things were relevant to the question of the degree and continuity of disability. It was therefore competent to receive evidence concerning them.

The judgment is therefore reversed, with directions to grant appellant a new trial.