## Louisville & Nashville Railroad Company v. Scalf.

(Decided October 15, 1913).

## Appeal from Knox Circuit Court.

1. Appeal—Objections—Exceptions.—Where neither objection was made nor exception taken to the ruling of the court, an error complained of cannot be reviewed upon appeal.

2. Evidence—Statements as to Sufferings.—Where physical or mental suffering of an injured person are proper subjects of inquiry, the usual expressions of such suffering, manifested or made at the time, may be admitted as original evidence.

3. Evidence—Statement to Physicians—Res Gestae.—So much of an injured party's statement to her physician, at the time of examination by him, as is necessary to enable the physician to know the location, cause and nature of the injury is admissible as part of the res gestae.

4. Evidence—Opinions.—A question which was leading, and the answer thereto being an expression of opinion by the witness, should have been excluded.

5. Witnesses—Impeachment—Character.—Evidence of the general character of an adverse witness for immorality is admissible to impeach the credibility of such witness, and it was error to exclude it, notwithstanding such fact was proved by other witnesses in the case.

6. Carriers—Injuries to Passengers—Care Required.—A passenger should be allowed a reasonable opportunity to board a car of the carrier's train upon which his ticket entitles him to ride, and it is negligence upon the part of the carrier to prematurely start the car and not give the passenger a reasonable opportunity to enter it.

7. Carriers—Injuries to Passengers—Trial—Instructions.—In an action for injuries to a passenger for the negligence of the carrier in suddenly starting the train as she was about to enter the car and the negligent act of a trainman in pulling her from the steps, instructions which did not submit to the jury the issues as

to whether or not the injuries were the result of the premature starting of the train or the act of the trainman in pulling the passenger from the steps of the train or of the negligence of the passenger herself were prejudicial and authorize a reversal of the cause.

BENJAMIN D. WARFIELD and BLACK, BLACK & OWENS for appellant.

W. R. LAY, J. D. MAIN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Knox Circuit Court entered upon a verdict awarding appellee $500 damages for injuries alleged to have been sustained by her, through the negligence of appellant's servants, while she was attempting to enter a car of one of its trains as a passenger.

It appears from appellee's own testimony that her injuries were received under the following circumstances: After appellant's train whistled for Ely, a station upon appellant's railroad in Knox County, appellee bought a ticket entitling her to ride therefrom on the train to Barboursville. In attempting to enter the coach of the train, she stepped upon the first of the four steps leading into same, and was in the act of getting upon the second step, when the train suddenly started and threw her against the railing of the steps, striking her side against same. At this juncture, appellant's flagman caught hold of appellee and pulled her from the steps, causing her body to again strike some part of the train. The train was then stopped and appellee boarded the train and took a seat in the coach, where she remained until reaching her home at Barboursville. After leaving the train at Barboursville, she walked a distance of 100 yards to her residence, and upon her arrival there took to her bed and became unconscious. According to her further testimony and that of a physician and others, she was ill and confined to her bed about two weeks, and some time thereafter continued to suffer much pain. At the time of receiving her injuries, she was pregnant and had been so for about five months.

Appellee's testimony as to the manner of receiving her injuries was corroborated by that of her sister-in-law and, in part, by her brother, both of whom accompanied her to the station. The testimony of the brother, however, did not corroborate her statement that the flag-

man caught hold of and pulled her from the step of the train after it started.

The evidence introduced in appellant's behalf as to what happened at the time appellee claims to have been injured differs radically from that of appellee and her witnesses. According to the testimony of G. B. Carter, the flagman of the train, it stopped upon reaching Ely at the usual place, about midway of the platform, where it remained about two minutes, several passengers getting off. The train was started by a signal from the flagman, which was repeated by the conductor to the engineer, the train moving off slowly as usual. What then occurred can better be understood from the following testimony of the witness: "Q. If you discovered any woman on the ground there any time tell the jury about where she came from and what she did and what she said. A. At the time I gave the signal for the train to start the conductor gave the connecting signal from the coaches to the engine, and after he had got this signal this lady (meaning appellee) run from the general waiting room, or in that direction, and the train had started before she could get hold of it; and she grabbed hold of the forward end of the ladies' coach and run along three or four or five or six steps before she turned loose; as I turned around I seen her, but I turned around and I got the conductor to take my signal, and he also seen her about the same time I did and I got the train stopped after it had run about the coach's length's distance from where it started there, but she had turned loose from the hold about where the train stopped and she got up by my assistance. I helped her on."

"Q. Did she board it—that train—during the time the train stood there the two minutes? A. No, sir."

"Q. What was the train doing when you first saw her? A. It was moving.

"Q. Where was she then? A. She was about middle ways from the platform or from the door and the train—about a distance of from this chair (indicating) to the gentleman there.

"Q. Which door do you think of? A. The general waiting room of the building.

"Q. The woman was between that door and the train? A. Yes, sir.

"Q. Did you say anything to her? A. I told her to wait, we would stop the train.

Q. What did you do? A. I had already got the conductor the signal to stop and he gave the engineer the signal to stop.

"Q. What did he do? A. Nothing.

"Q. What did she do? A. Grabbed hold of the hand-hold and run along.

"Q. Did she ever get her feet up to the steps? A. No, sir.

"Q. How far did she run along the train? A. I judge ten feet.

"Q. What did she do? A. Turned loose.

"Q. Did she ever get her feet on one of those steps? A. No, sir.

"Q. Tell the jury whether or not you took hold of her. A. No, sir; I didn't take hold of her at all until the train had stopped and I was assisting her on the rear end of the train, the train had stopped.

"Q. Did you take hold of her and pull her off on the ground? A. No, sir, I didn't.

"Q. Was she at any time off of the ground until you assisted her on to the train? A. No, sir. * * *

"Q. Was there anything about the coach or platform to hit her or did anything hit her there? A. No, sir.

"Q. Did she fall on the ground or anything of that sort. A. No, sir, she didn't."

The flagman's version of what occurred when appellee claims to have been injured was corrobarated by Worsham, the train conductor and, in part, by Upton, the engineer in charge of the train; both testifying as to the starting and second stopping of the train, and that the stop was made within 30 feet of the point from which the train started. Both the engineer and conductor also testified that, upon reaching the station, the train stopped at the usual place and for the usual time, which was two minutes, and the conductor further testified that neither he nor the flagman took hold of or pulled appellee from the steps of the coach. The conductor also testified, that seeing appellee attempting to get on the train while in motion, he called to her not to do so, and stopped the train to let her get on; that while on the train between Ely and Barboursville she made no complaint of having been injured in attempting to get on the train; and that upon the arrival of the train at Barboursville she left it without assistance and, when last seen, was proceeding on her way to her home.

S. D. Hughes, a, coal merchant of Ely, testified, as did the conductor and flagman, that appellee ran and made an effort to catch the train as it was starting; that the conductor hallooed and told her not to do that, and then had the train stopped after which she got on. Hughes also testified that the train started off gradually as trains generally do.

The answer of appellant traversed the material averments of the petition and pleaded contributory negligence, and the latter plea was controverted by reply.

Appellant sought a new trial in the court below upon the grounds: First, that the court erred in permitting the filing by appellee of an amended petition; second, in admitting incompetent evidence for the appellee and rejecting competent evidence offered by appellant; third, in instructing the jury; and fourth, in refusing instructions asked by appellant; and these grounds are now relied on for a reversal of the judgment.

It was alleged in the amended petition, which the court permitted appellee to file, that the train was, by the negligence of the trainmen, started suddenly before she had a reasonable time to get to a seat or to get from the steps into the coach, thereby throwing her against the banisters of the car steps and other portions of the car and step; that one of appellant's servants negligently caught and pulled her from the steps; and that her injuries were caused by the starting of the train and the act of the servant in pulling her from the train. The record failing to show that appellant objected to the filing of the amended petition or took an exception to the ruling of the court in permitting it to be filed, the error complained of cannot be reviewed by us.

The alleged incompetent evidence which appellant claims was admitted in behalf of appellee consisted of the testimony of various witnesses as to what they saw and heard of appellee's sufferings during the several days she claimed to have been confined at her home following the infliction of the injuries. So much of it as relates to what was said by her to them with respect to the manner of receiving her injuries and her sufferings was incompetent and should have been excluded. In considering evidence of this character, in L. & N. R. R. Co. v. Smith, 27 Rep., 257, we held that the testimony of witnesses as to conversations with the person injured, after the injuries were inflicted, in which he

related the nature and extent of his suffering, should have been excluded as incompetent. The opinion quotes, with approval, the following excerpt from the opinion in Bocan v. Charlton, 7 Cush., 586:

"Where bodily and mental feelings of a party are to be proved, the usual and natural expression of such feeling made at the time are considered competent and original evidence in his favor. There are ills and pains of the body, which are proper subjects of proof in a court of justice, which can be shown in no other way. Such evidence, however, is not to be extended beyond the necessity on which the rule is founded. Anything else in the narration or statement is to be carefully excluded, and the testimony is to be confined strictly to such complaints, exclamations and expressions as usually and naturally accompanied and furnish evidence of a present existing pain or malady."

Such of the evidence complained of as does not come within the rule as announced above was incompetent and should have been excluded by the court.

With reference to the testimony of Dr. Warren, parts of which were objected to by appellant, a different rule applies, which is well stated in Shade's Admr. v. Covington, &c., Bridge Co., 119 Ky., 592. Shade's Administrator sued to recover damages for the death of his intestate caused by a fall on the ice on defendant's bridge. The only evidence as to the manner of her fall was furnished by statements of the intestate made to her physician after she had been taken home, to whom she said, "she had fallen on the ice on the C. & O. bridge." As to the admissibility of this evidence it is, in the opinion, said:

"Here the party whose statement is offered to be proved was suffering from a physical injury. What she said to her physician as to the pain it then caused her, and the effect it had upon her senses, was necessary for him to know in order that he might intelligently treat the injury. Under such circumstances, it is presumed that the party suffering will state truly how she is affected, as otherwise the medical man might be at a loss as to the remedies needful to her condition. The incentive for a fair statement is so great that the presumption is that she will not hazard an untruth to better her financial condition, as by fabricating a basis of claim against the person charged with her injury at the expense of her permanent health, or maybe of her life. For that

reason, the law allows the proof of what she said to her physician at the time of the examination as a part of the res gestae. What the injured party may have said to any one at the time of the injury, or so immediately after it as to be regarded part of it, as being the verbal part of a continuing occurrence, would also be admitted, upon familiar grounds. What was said after the lapse of a few minutes—half hour or so in this case—to the attending physician, to aid him in determining the nature of the injury and to prescribe a remedy or treatment, is allowed, as an extension of the same rule of evidence. It rests logically upon the necessities of the case. It is a matter proper to be shown and not susceptible generally of being otherwise proven. But it must stop with the necessity for it. It was necessary for the physician to know whether the patient was suffering, and where the pain was, and as to its character. It was also proper that he should know how the injury was inflicted, as upon that knowledge the treatment, in part, might depend. So it was competent to show that the patient said she had received a blow on her head (if she did say it), and how she was otherwise hurt. But it was wholly immaterial to the physician's understanding of what it was necessary for him to know in treating the injuries whether she fell on appellee's bridge or elsewhere, or that she fell on the ice."

Anything contained in the testimony of Dr. Warren that goes beyond the limits prescribed in the opinion of the case supra, should also have been excluded by the trial court.

It is also complained by appellant that the court improperly allowed the following question to be propounded to appellee and her answer thereto. "Q. Tell the jury whether or not you yould have been able to have got on the train after you was struck there and after the train started when you was on, the rail first hit you in the side, if the conductor had not taken hold of you? A. Yes, sir, I think I would; if they had let me alone I am most sure I would." As the question was leading and the answer merely an expression of the opinion of the witness, the evidence was incompetent and should have been excluded. Besides, appellee did not testify that the conductor took hold of her. According to her testimony, it was the flagman that did so.

In our opinion, the trial court erred in refusing to permit appellant's witnesses, Josephine Hanson and J.

S. Hignite, to testify as to the reputation of appellee for immorality. Though allowed to say that they were acquainted with her general reputation in that respect, these witnesses were not permitted to say what it was. It appears from the avowals contained in the record that they would have said it was bad. The testimony was clearly admissible under section 597, Civil Code, which provides: "A witness may be impeached by the party against whom he is produced by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts except that it may be shown by examination of the witness, or record of a judgment, that he has been convicted of felony." In Helm v. Commonwealth, 26 Rep., 165, we said in respect to such testimony, "The Commonwealth was permitted to show that appellant's general moral character was bad by way of impeaching him as a witness. This also is complained of. But it is settled that the inquiry is not restricted to the witness' character for truth, but that his general moral character may be proved."

It is insisted for appellee that the error of the court in excluding the testimony of the two witnesses last named was not prejudicial, because it had otherwise been made to appear from the testimony of appellee herself that she had been married only three or four weeks before her injuries were received and that her pregnancy had existed five months before her marriage. We cannot accept this view of the matter. Appellant was not confined to the admission of appellee as to her immorality and had a right to prove that fact by witnesses of its own choosing. The testimony being competent, not for the purpose of showing that appellant had the right to injure appellee because of her bad character, but because it was competent to impeach her credibility as a witness.

The instructions, owing to their great length, are not copied in the opinion; the complaint made of them by appellant is well founded. They are involved and ambiguous in language and meaning, and do not correctly state the low. Among other errors, they improperly authorize a verdict for appellee, if the jury believe from the evidence that "the officers, agents or servants, or any of them, of the defendant company, negligently and

carelessly took hold of and jerked or dislodged the plaintiff, Scalf, from the steps or entrance of the car, * * * after she had boarded or attempted to board said train * * * causing her to fall against the railing of the coach of said train, injuring her etc.'' As according to appellee's own testimony, as well as that of her other witnesses, it was the flagman, if any one, who took hold of and pulled her from the steps of the car, the instruction should have confined appellee's right of recovery for being pulled from the train to the question whether it was done by the flagman alone. Again, their attempted application of the degree of care required of appellant's servants under the circumstances attending the infliction of appellee's alleged injuries was unnecessary and so worded as to confuse and mislead the jury.

Manifestly, appellee should have been allowed a reasonable opportunity to board a car of the appellant's train upon which her ticket entitled her to ride from Ely Station to Barboursville. Her complaint is, that by reason of the negligence of appellant's trainmen in suddenly starting the train while she was upon the steps of the coach she was attempting to enter, and the negligent act of its flagman in pulling her from the steps of the coach, she was thrown against the railing or steps thereof and thereby injured. Whether she was, by the premature starting of the train or the act of the flagman complained of, not given a reasonable opportunity to enter the coach and in consequence thereof received the injuries complained of, or whether her injuries, if any she received, resulted from her own negligence in attempting to get upon the train while in motion, were the questions that should have been submitted to the jury under such instructions as would have clearly advised them of the issues of fact, and law applicable thereto. As the failure of the circuit court to do this prevented appellant from receiving a fair trial, its motion for a new trial should have been granted.

On another trial the court should give the following instructions:

(1.) The court instructs the jury that it was the duty of the defendant to stop its train at Ely Station long enough to afford plaintiff, whose ticket entitled her to ride thereon to Barboursville, a reasonable opportunity to get aboard thereof in safety. And if they believe from the evidence that plaintiff, while using ordinary care for her own safety, got upon the steps of a coach

of the train, after it had stopped, in an attempt to enter same as a passenger, but was prevented from doing so by the negligence, if any, of the trainmen in starting the train, if they did so start it, without giving her a reasonable opportunity to get upon the platform of the coach in safety, and she was thereby, or by the negligence, if any, of appellant's flagman in pulling her from the steps of the coach to the ground, if he did so pull her, thrown against the railing or other part of the coach and her back, side, womb or other part of her person injured, they should find for plaintiff.

(2.) If they find for plaintiff as predicated in instruction 1, the jury should allow her such a sum in damages, if any, as they may believe from the evidence will fairly compensate her for the physical and mental suffering, if any of either, and the permanent impairment, if any, of her ability to earn money that may have resulted from and been directly caused to her by the negligence, if any, of the defendant and its servants complained of; but such damages, if any are allowed plaintiff, should not, altogether exceed ten thousand dollars, the amount claimed in the petition.

(3.) On the other hand, if the jury believe from the evidence that the defendant stopped its train a sufficient time to afford plaintiff a reasonable opportunity to safely get thereon, and that plaintiff's injuries, if any she sustained, were caused by her attempting to get upon the train after it again started and while it was in motion, and that but for such attempt, if any, on her part she would not have been injured, they should find for the defendant.

The foregoing instructions, with that defining ordinary care, given by the court on the first trial, will properly advise the jury as to all the law of the case. With respect to the refused instructions offered by appellant, it is sufficient to say that none of them was precisely correct in the form offered; therefore, it was not prejudiced by the refusal of the court to give them.

For the reasons indicated the judgment is reversed for a new trial and other proceedings consistent with the opinion.