# Steele Coal Company v. Vanover, Administrator of Isaac Luster, Jr.

(Decided May 19, 1925.)

## Appeal from Pike Circuit Court.

1. Evidence—Narrative Statements of Injured Person Not Admissible Unless Made to Physician for Purpose of Aiding in Treatment. —Where physical and mental suffering of an injured person is proper subject of inquiry, usual expressions of such suffering made at the time may be admitted as original evidence, but statements of a narrative nature, unless made to a physician and relating to matter which is necessary for him to know for a proper diagnosis and treatment, are not admissible.

2. Appeal and Error—Evidence—Admission of Statement of Deceased Employe that he was Not Sick when he Went Into Mine Held Prejudicial Error.—In action for death of mine employe, alleged to have been caused from effects of poisonous gases, statement of deceased after returning home, that he was not sick when he went into mine, and that another had told him to start pump, was not admissible and was prejudicial, though deceased's mother testified that deceased was in healthy condition when he went to work.

3. Master and Servant—Evidence Held Not to Show Death Resulted from Poisonous Gas.—In action for death of mine employe, evidence held not to show that death was caused from effects of poisonous gases, in view of positive evidence of physicians, who examined deceased, that he died from typhoid fever and liver trouble.

PICKLESIMER & STEELE for appellant.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Alleging that his intestate died from the effects of poisonous gases caused by the failure of the defendant to ventilate its mines, as required by the statute, the administrator of Isaac Luster, Jr., brought this action against the Steele Coal Company to recover damages. From a verdict and judgment in his favor for $4,000.00, the Steele Coal Company has appealed.

It appears that Luster, who was about seventeen years of age, was in appellant's employ. There was evidence that he was working in the mine on the day it is claimed he became ill, and that he was sent into the mine by appellant's assistant mine foreman. Another employe, who was working in the mine, said that Luster complained of a pain in his head, neck and stomach, and

he made Luster go out. This occurred between ten and eleven o'clock in the morning and Luster had been at work two or three hours. Mrs. Luster testified that her son had not been sick at all and was in a healthy condition when he went to work in the mine that morning. When he came home he said he was sick and his head was hurting him. He also said that he was not sick when he went into the mine and that Budge Fife told him to go into the mine and start the cipher line pump. When he returned he lay down and said he felt bad. He was sick a little over three weeks and then died. He became pale, and she could not keep his feet warm. He also passed blood with his urine. At one time he said, ''My eyes are just about out, mamma, I will have to get me a pair of glasses and have my eyes examined.'' He also said that he had a sweetish taste in his mouth. At no time was he warmer than a natural person. It seemed like he was cold all the time. There were no bright red spots on any part of his body. Dr. R. S. Johnson, who did not wait on the deceased, but testified as an expert, stated that bad air in the coal mines caused headache, dizziness and a weak stomach, and sometimes a nervous condition. The symptoms may be smothering, pain about the heart, and there might be a sweetish taste in the mouth. He also added that carbon monoxide gas affected the constituents and circulation of the blood. On cross-examination he stated that typhoid fever in its first stages would produce headache and would also bring about the same results which he had indicated as being the symptoms of gas poisoning. He never knew of typhoid producing a sweetish taste in the mouth, but said that one of the symptoms was small red spots on different parts of the stomach. Millard Ratliff testified that the air was bad where he was working, but he did not know the condition of the air where the boy was working. H. W. Fife went to the pump where the boy worked the day after the boy took sick. He never noticed anything wrong with the air then, but did notice it was bad about a week or two afterwards. At that time he began to feel dizzy, his heart beat faster, and there was a weakness in his knees which he attributed to the bad air. At this time the ventilation was the same as when Luster was working in the mine. Several witnesses testified that the statutory requirements as to ventilation were not complied with. On the other hand, the evidence for appellant is that there were several openings in the mine which furnished all the

air necessary and that the air was pure and fresh. Dr. C. L. Prichard, who had practiced his profession over twenty-five years, testified that he was called to treat the boy and made a diagnosis of his trouble. In his judgment, he had typhoid fever and he treated him for that trouble. The boy's death was caused by typhoid, complicated by liver trouble. On cross-examination he stated he visited the boy three or four times. He may have told his mother that he had yellow jaundice, as that was indicated by the look in his eyes. He had known of a typhoid patient passing blood. While the medical books say that typhoid patients have rose spots on the abdomen, in his experience there were many cases where rose spots did not develop. Dr. J. W. Vicars, who had been practicing for thirty-one years, saw the boy three different times before he died. According to his best judgment, the boy had typhoid fever and symptoms of an enlarged liver and jaundice. The first time he saw the boy he had a temperature of 101. The next time his temperature was subnormal and he had scarcely any circulation at all. On cross-examination he stated that a person affected by bad air has a headache and some suffering, such as a pain in the stomach. The books taught that there was a sweetish taste in the mouth, but he did not remember of ever hearing any one complain of that. While some of the books taught that typhoid fever victims had rose spots on the abdomen, you rarely ever found them on a person. Carbon monoxide will affect the red corpuscles, and that may cause jaundice. On redirect examination he stated that typhoid fever would also affect the red corpuscles, but in the boy's case he thought the effect was due to enlargement of the liver.

It is the rule in this state that where the physical or mental suffering of an injured person is the proper subject of inquiry, the usual expressions of such suffering manifested or made at the time may be admitted as original evidence, but statements of a narrative nature unless made to a physician and relating to a matter which is necessary or proper for him to know in order that he may accurately diagnose and properly treat the case are not admissible. L. & N. R. R. Co. v. Smith, 27 Ky. Law Rep. 257, 84 S. W. 755; L. & N. R. R. Co. v. Scalf, 155 Ky. 273, 159 S W. 804; Omberg v. United States Mutual Accident Association, 101 Ky. 303, 40 S. W. 909, 22 C. J. 268-269. Under this rule it is at once apparent that the statement of the deceased that he was not sick when he went into

the mine, and that Budge Fife told him to go into the mine and start the cipher line pump, should have been excluded. It is insisted, however, that the statement was not prejudicial because Mrs. Luster testified that the boy was in a healthy condition when he went into the mine. That may be true, but she should not have been permitted to fortify her statement by repeating a similar statement made by her son, and there can be no doubt of the prejudicial character of the evidence.

To recover in this case it was necessary for appellee to show that his intestate's death was caused by bad air or poisonous gases which he breathed in the mine. The evidence that the air was foul at the point in the mine where it is claimed the boy was working is very slight. It consists of the statement of another employe that he worked at the pump for several days after the boy was taken ill and not until a week or two thereafter did he detect that the air was foul. While there was evidence that the boy was in a healthy condition before he went into the mine, and that he took sick while there, and upon his return manifested some of the symptoms of gas poisoning, the probability that this caused his death is altogether too remote to uphold the verdict in the face of the positive evidence of the two physicians who examined him and gave it as their opinion that he died from typhoid fever and liver trouble, a condition which fully accounted for all the symptoms which he manifested during his long illness. A contrary view would permit the jury in such cases to reject the evidence of men who had spent a lifetime in the diagnosis and treatment of diseases and substitute their own views based on facts of such little probative value as to create only a suspicion of error on the part of the physicians. We, therefore, conclude that the verdict is flagrantly against the evidence.

Judgment reversed and cause remanded for a new trial consistent with this opinion.