## Marion et al. v. Frank R. Messers & Sons, Inc.

March 2, 1948.

Wm. B. Ardery, Judge.

744

Funk, Chancellor & Darnell for appellants.

Smith & Leary and Clyde E. Reed for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

This is an appeal from a judgment of the Franklin Circuit Court affirming a judgment and award of the Workmen's Compensation Board denying claimants any recovery for the death of Prentice Marion. The judgment of the full Board had upheld the recommendation of the referee denying an award to claimants. Thus with three strikes already against them and with an acknowledgment of the reluctance of this Court, as expressed in so many of its opinions, to disturb findings of fact made by the Workmen's Compensation Board, appellants nevertheless prosecute this appeal, earnestly contending that the record presents mistakes of law as applied to the facts which must be corrected by this Court.

### Facts in the Case.

Prentice Marion was employed as a laborer by appellee; both had accepted the provisions of the Compensation Law and his wages were sufficient to entitle him to maximum compensation if he is entitled to any. Among Marion's duties was the handling of sacks of cement weighing about 100 pounds each. He entered the King's Daughters Hospital on September 26, 1944, and died on October 6, 1944, from an abdominal abscess which ruptured into his stomach or abdominal cavity. The main question in the case is whether that fatal abscess was the result of natural causes, as contended by appellee, or whether it was caused by traumatic injury arising out of and in the course of his employment, as contended by appellant. There is no direct proof of

any traumatic injury sustained by Marion in connection with his work. To establish their case, appellants had to rely largely on the testimony of his fellow workers that he was apparently a stout, healthy man; that they had never heard him complain of any illness; that he had told them that he had hurt himself lifting cement sacks. They also relied on the testimony of a woman to whom deceased was later married, and of the mother and sister of that woman, that some time in the summer of 1944, when they were all sitting on the porch of the mother, Marion stopped and sat down on the porch; that he looked pale and said that he had hurt himself down at the place where he worked, at Messers.

The two foremen under whom Marion worked testified for appellee that they never knew of any accident sustained by Marion while in the employ of appellee and that he had never told them of any accident he had had while working there.

### Medical Testimony.

The medical testimony in the case was given by Dr. Grace Snyder and Dr. E. K. Martin for the plaintiffs and Dr. L. T. Minish for the defendant. The testimony of Dr. Snyder is of little probative value in this case. She is a specialist in diseases of the ear, eye, nose and throat, and this is not in her line. She did not attend deceased professionally but happened to see him lying on a cot in a little dwelling in Gaines Alley where she went seeking someone to do some work for her. She had no medical kit or instruments with her and made no physical examination. From a cursory examination he appeared to her to be a sick man and she was instrumental in getting him to the hospital. Her testimony was indefinite but in response to the question, ''Did he give you a history of the injury?'' she replied, ''Yes, I am sure he did. I am sure he told me either he lifted something heavy or something heavy fell on him or he fell—I have so many accidents, it is a little hard for me to remember.'' She testified that an abscess could be caused by a bruise from an injury.

Dr. Minish, for the appellee, testified in substance that he had made a limited examination of deceased in his office, about September 23, 1944, and found a large

mass in the upper left side of the abdomen but he could not say what it was; that abscesses sometimes result from injuries and could be caused by trauma or pre-existing diseases; that he found no indication that the mass he found was caused by trauma; that an abscess caused by trauma would ordinarily rupture on the outside; that he did not notice any discoloration around the abscess such as would usually come from a traumatic injury, but he could not say positively whether trauma did or did not cause the abscess; that deceased gave him no history of the case and told him nothing about having been injured; that if the mass he found was an abscess, the normal treatment would have been to open and drain out the pus and that such an operation might have saved his life; that he thought the case called for surgery and he, being a general practitioner, dropped the case.

Dr. E. K. Martin, for the appellants, testified in substance that he examined the deceased in the hospital shortly after he entered; that he found a soft, swollen mass on his upper left abdomen about the size of the palm of his hand, surrounded by a certain amount of induration, with some redness and a bluish tinge; that he diagnosed it as an abscess on the abdominal wall but that he did not know what caused it. On cross examination, he testified that abscesses result from injuries which become localized and can be brought about by bruises or pre-existing diseases; that there was no way to tell what might have caused this particular abscess; that death was caused by rupture of the abscess into the abdominal cavity; that an abscess caused by traumatic injury would probably rupture on the outside and the fact that it ruptured on the inside would, he admitted, indicate it came from a pre-existing disease though it was possible to have ruptured either way regardless of the original cause; that an abscess is not usually fatal and if this one had had early medical attention and proper operation, the life of the deceased could have been saved.

Dr. Martin filled out and signed the death certificate on October 12, 1944, which shows that Prentice Marion died on October 6, 1944, and the pertinent part of the certificate is as follows:

"Immediate cause of death: Gastric hemorrhage.

Due to abd. wall abscess which ruptured through into stomach.

"Other conditions

"Major findings:

"Of operations: No.

"Of autopsy: No.

"22. If death was due to external cause, fill in the following:

"(a) Accident, suicide, or homicide (specify): *Trauma from carrying cement.*

"(b) Date of occurrence

"(c) Where did injury occur: In or about home, on farm, in industrial place, in public place? *Industrial Place.* While at work X (e) Means of injury." (Italics ours)

It was largely on this certificate, together with a part of the testimony of Dr. Snyder, that appellants based this appeal and their reliance for reversal of the judgment of the lower court upholding the decision of the Board.

The Board accepted as competent testimony so much of the certificate as related to the matters about which Dr. Martin would know as a physician and from his examination of the deceased. It, therefore, accepted the doctor's statement in the certificate that death was caused by "Gastric hemorrhage due to abdominal wall abscess which ruptured through the stomach." The basis for the acceptance of this part of the certificate was that it was filled in, as shown from the doctor's testimony, from his own knowledge of the immediate cause of death based upon his examination and treatment of the deceased. The Board rejected the statements in this certificate that death was due to "trauma from carrying cement" and that the injury occurred in an "industrial place" while at work. The basis for the rejection of this part of the certificate, based on the doctor's testimony, was that it was not filled in from any information he received from the examination or treatment of the patient or from his own knowledge, but from what was told him by the deceased. With the rejection by the Board of that part of the certificate relating to the ex-

ternal cause of injury as traumatic and the place as an industrial place, it held that there was not sufficient competent evidence to sustain the burden of proof imposed by law on plaintiffs and denied them recovery.

Appellants, in their brief, apparently concede that the testimony of the lay witnesses, concerning statements of the deceased as to the cause of his injuries, is incompetent and cannot be considered by the Board as a basis for any finding that his injury arose out of and in the course of employment. Clearly such evidence was hearsay and had no probative value. They insist, however, that that part of the testimony of Dr. Snyder in which she relates the history of the injury as caused from lifting sacks of cement, as told to her by deceased, and that part of the death certificate signed by Dr. Martin showing that death resulted from trauma from carrying cement at his place of employment, is some evidence that the deceased was so injured and that in rejecting such testimony, the Board entirely ignored the *only* direct evidence as to the cause of decedent's death.

For the reasons heretofore indicated, Dr. Snyder's testimony as to what was told her by deceased as the cause of his injury was properly excluded. Since she was not treating him professionally and made no physical examination as a doctor, her testimony was on the same basis as any lay witness and was properly rejected by the Board as mere hearsay evidence on the authority, cited by it, of Louisville & N. R. Co. v. Scalf, 155 Ky. 273, 159 S. W. 804, in which this Court held that so much of the testimony of a witness as relates to what was said by the injured person to the witness with respect to the manner of receiving her injuries and concerning her suffering, was incompetent and should be excluded.

A somewhat different rule applies in statements made to an attending physician in order to enable him to diagnose the case and to aid him in determining the nature of the injury and to prescribe a remedy or treatment. The reasons for the ruling, its extent and limitations, as applied to medical testimony, is well set out in Shade's Adm'r v. Covington-C. Elevated R. Transfer & Bridge Co., 119 Ky. 592, 84 S. W. 733, quoted in the Scalf case supra, and will not be repeated here.

Neither Dr. Minish nor Dr. Martin, when testifying as witnesses in the case, stated that any history of the case was given to them by deceased or that he indicated that he had been injured by any accident such as, in medical terms, would be called "trauma." However, in the death certificate Dr. Martin, in filling out the blanks on the form, does specify, as shown in the italicized words in the certificate copied above, "trauma from carrying cement" and "industrial place" as showing how and where the injury occurred. Upon the recall of Dr. Martin on cross examination concerning this death certificate, he said that his information with reference to the family history of decedent and the words, "trauma from carrying cement" and the words, "industrial place" were based entirely on what deceased told him and were not based on any examination which he made of deceased or of his own knowledge.

## The Death Certificate.

The question then arises: To what extent is this death certificate admissible to establish the fact that the abscess which caused decedent's death resulted from a traumatic injury caused from carrying cement at appellee's place where he worked? Section 213.190 KRS provides that the certificate of death shall be prima facie evidence in all courts and places of facts therein stated. Construing this statute in Kentucky Home Mut. Life Ins. Co. v. Watts, 298 Ky. 471, 183 S. W. 2d 499, 502, this Court said:

"It will be noted that the Statute provides that the certificate of death shall be prima facie evidence only of facts appearing in the certificate. Then, what are the facts appearing in the certificate to be given such great weight? Certainly, the Legislature did not mean that an opinion of the person making out the death certificate should be given any greater weight than the opinion of any other person, or even as great weight as the opinion of a person or group of persons who were in position to consider all the evidence in respect to the circumstances provable in a court of law. It is a matter of common knowledge that some death certificates are filled in and signed by coroners or attending physicians without investigation, or without any basis, other than mere suspicion, upon which to determine the manner in

which the deceased arrived at his death. It is likewise a fact that coroners oftentimes fill out death certificates without holding an inquest; and it is almost invariably true that when an inquest is held, little evidence is introduced before the coroner's jury. That being true, the statement in the certificate that death was the result of suicide does not constitute a fact within the contemplation of the Legislature, but a mere opinion of one who likely did not have knowledge of all the circumstances surrounding the death. The fact concerning the cause of death in the certificate which was contemplated by the Legislature is the fact that the deceased came to his death by a gunshot wound, the words 'self-inflicted' and 'suicide' being mere expressions of the opinion of the person filling out the certificate. * * *

"And so, under the Statute, the certificate of death is admissible for the purposes of evidencing the identity of the deceased and the fact that his death was caused by a gunshot wound, but is not admissible as evidence in respect to the issue of accidental death or suicide."

Attorneys for appellants, in their brief, concede that the words, "from carrying cement in an industrial place" are not prima facie evidence of facts, as the doctor who filled out the certificate could not have obtained that information from his personal observation of the patient and could only have received it from a history given him by the patient. But they insist that that part of the statement in the certificate to the effect that the injury was caused by trauma is prima facie evidence. The doctor who made out the certificate received the information from the same source as he received the other rejected words quoted above, "from carrying cement in an industrial place," to-wit, from the deceased and not from his own examination as the following testimony shows:

"Q-23. The description as to the immediate cause of death was from your knowledge based on the examination and treatment which you made of Prentice Marion? A. That's right.

"Q.-24. At question 22 in the certificate there are the words 'trauma from carrying cement,' how did you get the information for that answer. A. I think that again was from him.

"Q.-25. Was this statement 'trauma from carrying cement' based entirely on the information you received from the decedent? A. Yes, I would say so.

"Q.-26. And no part of this answer was based on any examination or treatment or anything revealed by your examination or treatment of the decedent? A. No.

"Q.-27. I will ask you whether that same state of facts is true for the words 'industrial place' appearing in answer to sub-section c of question 22 of the certificate. A. I can't answer that. (Witness was shown copy of death certificate) That 'industrial place' is based on what he told me, that the thing originated from where he worked."

In a proper case an attending physician may give as substantive evidence, with opportunity for cross examination, what the injured party may have said to him as to the cause of an injury, to aid him in determining the nature of the injury so he can prescribe a treatment. This to be admitted as part of the res gestae. It rests logically upon the necessity of the case but it must stop with the necessity for it. Shade's Adm'r v. Covington-C. Elevated R. Transfer Bridge Co., supra. It does not follow that a death certificate filled in and signed by attending physicians, often without investigation or without any basis other than mere suspicion, will be admitted as prima facie evidence upon which to determine the manner in which the deceased met his death. To the extent that such a certificate is based on facts within the personal knowledge of the physician, based upon his examination of a patient, it may be prima facie evidence. To the extent that it is based on information received by the physician from the patient, it would not be. We do not think the Board committed an error of law in refusing to accept this part of the death certificate as competent evidence as to the cause of death, especially in this case when the same doctor who filled out the certificate testified in conflict therewith as follows:

"Q.-17. You don't know what caused that? (abscess on the abdominal wall) A. No, I don't know what caused it—no."

Conclusion.

In their brief, appellants cite and rely on a number

of cases in which this Court has upheld the award of the Workmen's Compensation Board in close cases and in which the evidence produced before the Board was largely circumstantial. Such cases as Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142; Raymond Contracting Co. v. Little, 255 Ky. 461, 74 S. W. 2d 926; Black Mountain Corporation v. Humphrey, 211 Ky. 533, 277 S. W. 833; Codell Const. Co. v. Neal, 258 Ky. 603, 80 S. W. 2d 530; Wisconsin Coal Corporation v. Haddix, 280 Ky. 676, 134 S. W. 2d 232, and Coleman Mining Co. v. Wicks, 213 Ky. 134, 280 S. W. 936. The situation in all of these cases is the opposite from what we have here in that in all of them this Court upheld the award of the Board because there was some evidence of probative value to sustain the award, even though that evidence was circumstantial. In the present case the referee and the full Board found that there was no evidence of probative value to justify a finding that Prentice Marion's death was caused by any accident that arose out of and in the course of his employment. The Board's decision was upheld by the Circuit Court and must be upheld here unless appellant can show an error of law was committed or that there was no evidence of probative value to sustain it. It is not the province of this Court to re-examine the proof as we do in an equity case and to reach such conclusions therefrom as we think the evidence establishes. We are confined on appeal to an examination of whether or not there is any substantial evidence to support the Board's findings of fact and are not at liberty to weigh the evidence adduced. With this limitation on our power and duties in mind, we have carefully read the evidence adduced by the claimants to sustain their claim and from it we cannot say that the Board was not justified in its conclusion that the claimants had failed to establish by any substantial evidence of probative value that the death of Marion was caused by injury or accident arising out of and in the course of his employment and therefore not compensable.

Wherefore, the judgment of the lower court which upheld the decision of the Board is affirmed.

Judgment affirmed.