## Aetna Life Ins. Co. of Hartford, Conn., v. Staggs.

(Decided Oct. 9, 1934.)

EDWARD L. ALLEN for appellant.

O. W. CAIN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In September, 1923, the appellant issued to the North East Coal Company a group policy of life insurance which also carried a disability clause, insuring the lives of its employees. Each employee of the coal company after having worked continuously for the company for a period of six months was originally issued a $500 certificate of insurance, and, after each year of continuous service, the employee was issued an additional certificate of $100. The amount of insurance carried for the benefit of the appellee, Staggs, at the time of his alleged disability which occurred November 20, 1931, aggregated the sum of $1,300. On October 20, 1931, a rider was attached to the group policy according to the terms thereof providing that the policy was to and did automatically expire January 1, 1932, without privilege of further renewal.

It appears that Staggs continued in the service of the company from the date of the issuance of the group policy in 1923, until November 22, 1931, at which time he was operated on for ruptured appendix, resulting in a hernia, which, according to the contention of appellee, permanently and totally disabled him from pursuing his occupation as a coal miner. That clause of the policy under which appellee sues, reads:

"If total disability of any employee entitled to insurance under the schedule of insurance contained in this policy begin before age sixty, and if due proof be furnished the company after such disability has existed for a period of six months, and

if such disability presumably will during lifetime prevent such employee from pursuing any occupation for wages or profit, such employee shall be deemed to be totally and permanently disabled within the meaning of this policy.''

After Staggs was discharged from the hospital, he continued to work in the mines as a switch flagman, in which work he continued each day the mine ran, up to the date of the trial of this case, March 20, 1933. About January 1, 1933, Staggs filed this suit in the Johnson circuit court to recover of appellant under the terms of his insurance policy, alleging that as a result of the operation and hernia he was permanently and totally disabled and asked to recover the sum of $1,300. A jury trial was had which resulted in a verdict and judgment thereon for the sum sued for. From that judgment appellant prosecutes this appeal.

Appellant insists that the cause should be reversed on ground (a) that the court erred in overruling its motion for peremptory instructions, (b) the court erred in instructions given, and (c) the court erred in refusing to give certain instruction offered by appellant.

We will discuss these topics in the order named.

(a) It is insisted that the court should have sustained appellant's motion for peremptory instructions because there was no evidence to show that Staggs was totally disabled, and his insurance policy had expired within less than six months after his disability occurred, and for authority in support of this argument, cites the cases of Ætna Life Ins. Co. v. McCullagh, 195 Ky. 136, 241 S. W. 836; Columbia Casualty Co. v. McHargue, 246 Ky. 93, 54 S. W. (2d) 617, and Ætna Life Ins. Co. v. Gullett, 253 Ky. 544, 69 S. W. (2d) 1068, 1071.

The first two above-styled cases deal with evidence relating to the nature of the disability, which question we will later refer to herein. The last case, Ætna Life Insurance Co. v. Gullett, relates to the issue respecting the expiration of the policy within six months after the disability attached.

It is conceded that Staggs' disability attached approximately six weeks before the expiration of his policy. The six months' provision in the disability clause relates to the duration of the disability and not to the life of the policy, and once disability attaches

within the lifetime of the policy and such disability continue for six months, it is immaterial that the policy may have expired before the expiration of the initial six months' disability. This question was in issue and discussed in Ætna Life Ins. Co. of Hartford v. Gullett, supra, wherein this court said:

> "To defeat his right of recovery by a cancellation, it must be made before the liability to him attached."

And citing Thompson v. Pac. Mills et al., 141 S. C. 303, 139 S. E. 619, 55 A. L. R. 1237, and other cases. However, there is language used in the opinion in the Gullett Case, supra, which indicates that the insured was not entitled to recover under the disability clause unless his disability continued six months before the cancellation of the policy. But this language is in contradiction to the language above quoted in the same case, and was inadvertently used and is not the law of the case. Otherwise the insured could be deprived of the benefits of the last six months of his insurance. Moreover, the language used in the disability clause does not warrant such construction. We find no language contained in the policy, expressly or impliedly, indicating that the disability must exist six months before the expiration of the policy to entitle the insured to benefits thereof.

Staggs, the appellee, testified that he stayed in the hospital six weeks after he was operated on, November 22, 1931, and after he began to sit up the rupture appeared in his side, and he was unable to work since the operation except as a switch flagman in the mines, for which he received $1.45 per day, and previous to the operation he was engaged in cutting and loading coal at a wage of $4 to $5 per day; that his duties as a flagman did not require any exertion in the way of stooping or lifting; that he just sat around near the switch and flagged the cars when necessary; and that he had been unable to perform the usual work as a coal miner since the operation. R. C. Thomas, superintendent of the North East Coal Company, corroborated Staggs' testimony, and also stated that Staggs' duty as a flagman required him to stand in the middle of the track and flag approaching cars, perhaps fifteen or twenty times a day, and the rest of the time he was sitting down doing nothing, which work required no manual labor; that before the operation, Staggs was engaged in running a cutting

machine in the mines and loading some coal; and that this was probably the heaviest work in the mines, and he had been engaged in this work twelve or fifteen years previous to the operation. Dr. W. R. Castle, a member of the medical staff of the hospital where Staggs was operated on, stated that when Staggs entered the hospital he had a rupture of the appendix, and that later a hernia developed at the same place the incision was made for the operation and he also had another hernia, what he termed an "umbilical hernia," but that this latter hernia does not disable him, but that the other hernia was a very bad one and had become worse than it was when he was released from the hospital. He examined Staggs on March 18 (two days before the trial), and in addition to the hernia he found that he also had high blood pressure which was 172.94. The doctor was asked and answered as follows:

"Q. Say whether or not in your opinion this man is permanently and totally disabled from the performance of manual labor. A. Yes, sir, I have examined him several times and a man as fleshy as he is, the rupture could not be cured by an operation.

"Q. Do you believe that he could be cured by an operation? A. No, sir.

"Q. Is he unable to perform manual labor? A. He is."

The evidence shows that Staggs weighed between 250 and 260 pounds. Dr. Picklesimer testified that in his opinion Staggs would never be able to do manual labor and that he is permanently and totally disabled. It was stipulated by the parties that if Dr. J. A. Wells were present in court he would testify to substantially the same facts as were testified to by Drs. Castle and Picklesimer, and the jury was admonished to consider their testimony as his (Wells) the same as if he were present in court and testifying in person. Dr. Hall was introduced for appellant, but his testimony does not seriously contradict that of the doctors who testified for Staggs. He stated that Staggs could do light jobs around the mines, and that he could not see any reason why he could not undergo an operation for the hernia with local anesthetic, and that he did not see any reason why it should not be a success, although he said, "an operation on a person of his size would be more diffi-

cult.'' He was asked to state to the jury whether or not Staggs is permanently and totally disabled from performing any occupation for wages or profit, and he answered:

> "I would not advise him to do hard work but I do believe he is able to do some light work. * * * I would not advise him to load coal or do heavy work like that.''

It was also stipulated by the parties that if Dr. Archer was present he would testify to the same things, substantially, as were testified by Dr. Hall, and the jury was admonished to so consider his testimony.

Thus it will be seen that there is not only *some* evidence of a probative and substantial nature tending to show that Staggs is disabled, but in our view the preponderance of the evidence shows that he is disabled from performing the duties of a coal miner substantially as he did before his disability occurred. This being true, it follows that he is entitled to the benefits of the disability clause of the policy, although he may be able to perform or do light work about the mines, such as he did after the operation. It has often been written by this court that the words "totally disabled" mean "inability" to do and perform in a reasonable and practicable way all material acts in the pursuit of the occupation or employment of the insured, but do not mean absolute helplessness or entire physical disability. Equitable Life Assur. Soc. of U. S. v. Fannin, 245 Ky. 474, 53 S. A. (2d) 703; Ætna Life Ins. Co. v. Wyant, 249 Ky. 562, 61 S. W. (2d) 50. Many other cases to the same effect could be cited, but this rule is too well known to the legal profession to require an elaborate citation of authority.

(b) It is insisted that instruction No. 2 given by the court was erroneous, because it did not follow the language of the group policy, in that it failed to require the jury to believe that the disability sued for must exist for a period of six months before the cancellation of the policy. Our conclusions respecting the construction of the disability clause of the policy renders it unnecessary to discuss this complaint. In fact, such instruction would have been erroneous.

The next complaint is that the court should have given instruction B offered by appellant as follows:

644

"The court tells the jury that it was the duty of the plaintiff to take such steps as would reasonably have been taken by a person of ordinary prudence situated as plaintiff was, to minimize the effects of the hernia mentioned in the evidence, and if you believe and find from the evidence that the hernia mentioned in the evidence could have been cured by an operation at a reasonable cost and reasonable safety to plaintiff, and that said hernia was the only injury producing total disability, if he was totally disabled, the law is for the defendant, and the jury will so find."

There is no evidence conducing to show that Staggs failed to do what could have been reasonably expected of him respecting the treatment of his injury. There is no evidence to the effect that the doctors had advised an operation for the hernia or that Staggs had refused same. In fact, three doctors testified that in view of Staggs' age and weight, in their opinion his hernia could not be cured by an operation. Moreover, it has been held that an insured will not be required to submit to operations in an effort to minimize or cure his disability for the benefit of the insurer. Jefferson Standard Life Ins. Co. v. Hurt, 254 Ky. 603, 72 S. W. (2d) 20.

Finding no error in the record prejudicial to the substantial rights of the appellant, the judgment is affirmed.