## GENERAL AMERICAN LIFE INSURANCE CO. v. BRYSON.

No. 26625. Sept. 29, 1936.

Rehearing Denied Nov. 10, 1936.

William F. Tucker and Frank Settle, for plaintiff in error.

Martin & Spradling, for defendant in error.

PER CURIAM. On November 29, 1927, the Missouri State Life Insurance Company issued to the Foster Petroleum Corporation a group life insurance contract for the purpose of insuring the lives of employees of the Foster Petroleum Company, and for the further purpose of insuring such employees against total and permanent disability caused by bodily injury or disease. The insurance contract became effective October 15, 1927, and was for the term of one year with renewal privilege providing that it might be renewed from year to year. The contract set forth in a "Plan of Insurance" a schedule of the amount of insurance as to each employee, based on the length of continuous service. The employee with less than one year service was insured in the sum of $500, and $500 additional insurance was added for each additional year of continuous service. The contract stated that the employees were automatically insured in accordance with the terms of the Plan of Insurance. The contract further provided that the insurance on any employee should cease upon the termination of his employment, except that, in case of termination of employment for any reason, the employee should be entitled to have issued to him under certain conditions a policy of life insurance in an amount equal to the amount of protection under the group policy. The contract declared that the company would issue to the employer for delivery to each employee an individual certificate setting forth a statement as to the insurance protection and to whom payable.

On December 24, 1927, the insurance company, pursuant to the contract, issued to John William Bryson, an employee of the Foster Petroleum Company, a certificate insuring the life of Bryson for the sum of $500, payable to Martha T. Bryson, wife of the insured. By further certificate the insurance was increased by $500 effective June 24, 1928, again increased by $500 effective June 24, 1929, and again increased by $500 effective June 24, 1930. The certificate contained the following provision:

"If the employee shall furnish the company with due proof that before having attained the age of 60 years, he or she has become totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months, the company will immediately pay to the employee, in full settlement of all obligations hereunder, the amount of insurance in force hereunder on the employee at the time of the approval by the company of the proofs as aforesaid."

This provision of the certificate issued by the company to Bryson is identical with a provision of the group policy except that the words "and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation" do not appear in the provision in the group policy.

Action on the policy was commenced by Martha T. Bryson in the district court of Tulsa county against the Missouri State Life Insurance Company. General American Life Insurance Company was substituted as defendant as successor in interest of Missouri State Life Insurance Company. The cause was transferred to the court of common pleas of Tulsa county, and trial was had in that court. The parties will be referred to as they appeared in the trial court.

The plaintiff, in her amended petition, after pleading the group life insurance contract, the original certificate issued to John William Bryson, and the three certificates

increasing the amount of the certificate to $2,000, alleged that Bryson, on June 6, 1930, due to disease, became totally and permanently disabled from performing the work in which he was engaged; that he was thereby wholly prevented from engaging in any gainful occupation until his death; that the group life contract and certificate were in full force and effect; that Bryson made demand on the Missouri State Life Insurance Company for payment to him of the sum of $2,000; that the company refused payment; that Bryson died December 3, 1932, and that plaintiff was his widow and beneficiary under the policy.

Defendant answered by general denial of the allegations of the amended petition, admitted it had succeeded Missouri State Life Insurance Company, admitted the issuance of the group insurance policy to Foster Petroleum Company and the certificate to John William Bryson. Further answering, defendant, after pleading the provision of the group policy as to termination of the insurance on termination of the employment, alleged that the petroleum company by letter directed the insurance company to terminate the insurance and that it furnished the insurance company a census sheet directing termination of the insurance, and that the insurance company pursuant thereto terminated the insurance effective December 31, 1930.

The reply was a general denial.

Upon the issues thus joined there was a trial to a jury resulting in a verdict for plaintiff in the sum of $2,000 and interest at the rate of 6 per cent. per annum from the 1st day of October, 1931, for which judgment was rendered by the court.

Motion for new trial by defendant was overruled, and defendant appeals.

The testimony for plaintiff was to the effect that her husband, the insured, became ill on June 6, 1930, when Dr. J. P. Erby was called to the Bryson home to attend Mr. Bryson; that Mr. Bryson went to a hospital at Tulsa October 8, 1930, where he remained six days; that he went from there to the Muskogee Hospital for Veterans, remained there 30 days, returned home for a few days, returned to the Muskogee Hospital December 10, 1930, remained there until May, 1931, returned home and remained there until shortly before his death, when he returned to the Muskogee Hospital, where he died December 3, 1932 Mr. Bryson was a pumper for the petroleum company and he was carried as an employee and paid his salary until the end of 1930. During the summer he was supplied with a helper and appears to have performed some light work. The only medical testimony

was that of Dr. Erby, who said that in his opinion deceased was unable from the time he first saw him, June 6, 1930, to perform his duties as a pumper or any other duties requiring physical exertion of any nature whatsoever. Three letters were admitted in evidence. One was dated July 18, 1931, written by John R. Kerby at Mr. Bryson's request to the Missouri State Life Insurance Company, notifying the company that Bryson was totally disabled, and asking the company's advice as to what action to take. Under date of August 3, 1931, the company wrote Kerby acknowledging receipt of his letter and advising him that it was looking into the matter. Under date of September 1, 1931, the company again wrote Kerby, enclosing papers to be used in submitting claim for permanent total disability benefits. The witness Kerby testified that he had the forms filled out by Bryson and by Drs. Erby and C. W. Young, and that he mailed them to the company a few days after he received them. On December 7, 1932, Kerby wrote the company stating that he had written them a year or year and a half before for the papers to prove disability, and that he had received them from the company, had had them completed, and had returned them to the company, and advising the company that Bryson had died. Kerby wrote the company to the same effect December 29, 1932.

For the defendant there were introduced the letter and census sheet set out in its answer. No premiums were received by the company after December, 1930. An officer of the company testified that the Kerby letters were all the papers received by the company with reference to the Bryson claim.

Defendant presents its specifications of error under four propositions.

The first of these, to which it directs its principal argument, it states as follows:

"Where a group policy issued to employer provided that insurance would terminate as to employee with termination of his employment, provision that insurer would pay insurance in force at the time of its approval of proof of disability, prevented recovery on behalf of employee who became disabled while the insurance was in force, but who did not furnish proof of his disability until after the termination of his insurance coverage by termination of his employment, as provided in the policy, and on whose insurance coverage no premiums were thereafter paid nor any effort made to convert the coverage to an individual policy, or otherwise to keep it alive."

In support of this proposition defendant cites and discusses a number of cases from

other jurisdictions. The only Oklahoma case cited is Franklin Life Insurance Co. v. Fisher, 164 Okla. 193, 23 P. (2d) 151, which did not involve the question in the case at bar. The question here involved appears to be of first impression in this state.

The leading case cited by defendant is New England Mutual Life Insurance Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A. L. R. 1075. Defendant states that the point involved and the decision in that case are almost identical with the Oklahoma case of Franklin Life Insurance Co. v. Fisher. In the Fisher Case the policy provided that if proof should be furnished to the company that, after payment of one full annual premium and before default in payment of any subsequent premium, the insured had become disabled in certain degrees as set out in the policy, then the company would grant a monthly income during the continuance of the disability, the first income payment to be due on the first day of the month following receipt of proof of the disability. The question for decision was whether insured could recover for such disability payments under the terms of the policy prior to the date proof of disability was furnished. By reason of the terms of the policy this court held that the furnishing of proof of disability by the insured to the company was necessary before the payments under the policy began to accrue. In the Fisher and Reynolds Cases, and in cases construing like policy provisions, the benefits in the way of income payments were future benefits of which the insured might avail himself, if he chose so to do, by furnishing the proofs that were made conditions precedent to the income payments or waiver of premium payments by the express terms of the policies. This court, in the Fisher Case, quoted from the decision of the United States Supreme Court in the case of Bergholm v. Peoria Life Insurance Co., 76 L. Ed. 416, where the policy under consideration was nearly identical with that in the Fisher Case. The decision of the court in the Bergholm Case was the same as the decision of this court in the Fisher Case. In this line of cases the liability of the companies for the future benefits claimed by reason of prior disability was not denied.

In the case at bar no question of future benefits to be paid by way of income or by way of waiver is involved. The question for consideration and determination is whether a capital loss under the policy had occurred within the terms of the policy and during the continuance in force of the policy, and, if so,

the effect of supplying proofs of the loss to the company after the insurance coverage was terminated by termination of the employment of the employee. Plaintiff contends that a cause of action had accrued before termination of the employment and the insurance coverage, and that proof of loss could be made within a reasonable time thereafter. Defendant contends that recovery is defeated by failure to furnish proofs until after termination of the employment and the insurance coverage. Turning to the certificate issued to Bryson we find that no time limit is sought to be imposed for the furnishing of proof of total disability. The certificate does not state that proof shall be furnished during the continuance of the employment in order that insured may be entitled to the disability benefits. The provision is that if the employee shall furnish the company with **due** proof of the disability, the company will **immediately** pay to the employee the amount of insurance in force at the time of approval by the company of the proof.

The question as to whether or not Bryson was totally and permanently disabled within the terms of the group policy and certificate was submitted to the jury and the jury found in favor of plaintiff. By such finding it was established that deceased had been totally and permanently disabled within the terms of the policy and for a period of six months prior to the termination of the insurance coverage by termination of the employment.

In the Reynolds Case the policy itself required furnishing of proof of disability while the policy was in force as a condition precedent to the waiver of premiums thereafter falling due. It was necessary that three elements should concur to entitle the insured to the waiver of the later premiums, to wit: (1) A policy in force for the benefit, (2) the fact of disability, and (3) proof. Likewise in the Fisher Case.

In Burchfield v. Aetna Life Insurance Co., also an Alabama case, 159 So. 235, the policy required receipt of the proof during the continuance of the policy.

In Kingsland v. Missouri State Life Co., 6 S. W. (2d) 959, a Missouri case, the policy provided for benefits for six months' disability. The policy, however, was terminated before the disability had existed for six months. The court said that to defeat liability there must be a cancellation before liability attaches.

It is not considered necessary to discuss the opinions in the other cases cited by de-

fendant. We have examined these cases and considered them in the light in which they construed policy provisions before them.

Summarizing the position of defendant on its first proposition, the Bergholm Case, supra, is quoted from to the effect that contracts of insurance "must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense." Defendant then submits that no insurance was in force when the proof was furnished, and that the presentation of the claim while the policy was in force was a condition precedent to any liability of the company or the accrual of any right of action.

The group policy provided life insurance for the employees according to the "Plan of Insurance." Based on length of service the insurance was in an initial amount of $500 where the service was less than one year, and increased by $500 for each year of continuous service thereafter. The certificate then could be issued to the employee for the life policy in such amount as, under the plan, his length of service justified. The certificate issued to Bryson was in the sum of $500, indicating that his service then had been less than one year. In the three succeeding years, as his service continued, he received three additional certificates of $500 each, so that the final amount of the certificate of June 24, 1930, was $2,000. Premium on the policy was paid for the full year, 1930.

Payment of a death loss was to be made if the death occurred while insured was in the employ of the employer during the continuance of the policy.

Upon the death of the employee the policy matured and the liability of the company to pay arose. There remained one step for the beneficiary to take, to furnish proof of the death, for the company agreed by its policy "immediately upon receipt of due proof of death" to pay the amount for which deceased was insured.

By the total and permanent disability benefits clause, heretofore set out in full, the company agreed that it would "immediately pay to the employee in full settlement of a.l obligations hereunder the amount of insurance in force hereunder on the employed at the time of the approval by the company of the proofs as aforesaid." The proof to be furnished was that the employee had been "so permanently and totally disab'ed for a period of six months." In the death case the amount to be paid was ascertainable immediately the insured died. In the disability case the policy did not provide that the disability benefits should be to an amount in force when the disability began, nor when it had endured for six months, but should be the amount in force at the time the company approved the proofs. The language of the policy was no doubt selected by the insurance company. It may not appear to be entirely free from ambiguity, but we do no violence to it in our interpretation of this provision of the insurance contract.

The death of the employee in the one case matured the policy. Likewise the total and permanent disability which had endured for six months prior to termination of the employment and the insurance coverage matured the policy. In either case the company agreed immediately to pay the loss on receipt and approval of the proofs. The liability of the insurance company became fixed immediately upon expiration of six months from the inception of his total and permanent disability. After the liability became fixed there remained one act to be performed by the beneficiary, the furnishing of proof as provided by the policy.

Once the liability of the company became fixed, termination of the employment thereafter could not and did not in any way alter or affect the fixed liability.

In the Alabama case of Prudential Insurance Co. v. Gray, 159 So. 265, insured became total y and permanently disabled April 15, 1931, on September 2, 1931, the policy was terminated by nonpayment of premium and by insured ceasing to be an employee, and on November 5, 1931, the insurance company was notified. The court said:

"But there is a difference between the existence of a right to disability and the accrual of the cause of action for the recovery. If the policy is so set up that the claim came into existence when the disability occurred, but that the cause of action did not accrue until proof of the disability was furnished, the delay of the proof not extending beyond a reasonable time * * * did not cut off the claim, though the proof was not furnished until after there was default in paying the subsequent premium.

"The question of whether the proof is a condition to the existence of the claim or to the right to sue on a claim which had otherwise accrued, depends upon the terms of the po'icy which fixes the circumstances necessary to create the claim.

"We have held, in respect to fire insurance, that, though the benefits are not payable until proof of loss is made, the failure to make the proof in the time designated does

not destroy the right of action, but only postpones its maturity, provided the failure is not set up in the policy as a forfeiture of the claim.

"The whole question is made to depend upon whether the requirement is set out in the policy as a condition to the existence of the claim or to the right of its immediate payment."

In McNally v. Phoenix Ins. Co., 137 N. Y. 389, 33 N. E. 475, cited in Pfeiffer v. Missouri State Life Insurance Co. (Ark.) 297 S. W. 847, it was said, quoting from the New York Court of Appeals:

"Those conditions which relate to matters after the loss have, for their general object, to define the mode in which an accrued loss is to be established, adjusted and recovered, after the reciprocal rights and liabilities of the parties have become fixed by the terms of the contract, and are to receive a more liberal construction in favor of the insured. In determining the liability of the defendant, it is entitled to the benefits of its contract, fairly construed, and can stand upon all of its stipulations. But when its liability has become fixed by the capital fact of a loss, within the range of the responsibility assumed in the contract, courts are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribed the formal requisites by means of which this accrued right is to be made available for his indemnification."

In Home Life Insurance Co. v. Keys, 62 S. W. (2d) 950, an Arkansas case, insured held an individual certificate issued under a group policy. He became disabled October 12, 1929, and died March 9, 1931. Proof was furnished the company May 5, 1932. The group policy was canceled at the instance of the employer December 31, 1930. The company urged that the group policy and the individual certificate did not continue in force thereafter. The court held that the making of proof of disability was not a condition precedent.

In Sovereign Camp W. O. W. v. Meek, 185 Ark. 419, 47 S. W. (2d) 567, the certificate had this provision:

"If such member, while younger than 60 years of age, and while the certificate is in full force and effect, has suffered bodily injury, through external, violent or accidental means, or by disease, and shall furnish satisfactory proof to the society that he is and will be permanently, totally, continuously and wholly prevented thereby for life from pursuing any and all gainful occupations or performing any work for compensation or value, he shall be entitled to the payment of onehalf the face amount of his policy."

The court said:

"Under our construction of paragraph 12 of the certificate quoted above, the existence of total disability during the life of the certificate was enough to create liability. Under a correct interpretation of the meaning of paragraph 12, the obligation of appellant rested upon the total disability of appellee during the life of the certificate and not upon the receipt of the proof of disability by appellant."

An analogous question was considered by the Circuit Court of Appeals, Tenth Circuit, in Kimel v. Missouri State Life Insurance Co., 71 Fed. (2d) 921. The insurance contract provided that the company would pay the insured a life income if he became totally and permanently disabled before attaining the age of 60. Insured became so disabled when 58, but did not furnish proof thereof until past 60. The court said:

"Proof fixes the time of payment; but disability arising before assured has attained the age of 60 raises the obligation to pay."

In Horn's Adm'r v. Prudential Ins. Co. of America (Ky.) 65 S. W. (2d) 1017, Horn held a certificate issued by the insurance company to him as an employee of the Louisville & Nashville Railway Company. The certificate provided for total disability benefits. Horn was injured January 13, 1931, while on duty. The insurance was paid to January 31, 1931. No further premiums were paid and the employer notified the insurance company of the termination of Horn's policy. Horn died November 11, 1931. The court said:

"The insurance company argues that its liability under the policy ended with Horn's release from the service of the railroad company and because of his failure to pay premiums thereafter. If Horn became totally and permanently disabled upon the day he received the injury to his foot, although his previous physical condition may have been the contributing cause, he at once became entitled to the indemnity promised him by his contract. The situation is just the same as though he had died that day and claim were being made for the indemnity provided for death through a natural cause. His right became fixed then. Equitable Life Assurance Society v. McDaniel, 223 Ky. 505, 3 S. W. (2d) 1093. It would be as anomalous to require a continuance of premium payments thereafter as it would be to require them after death. The premiums already paid carried the policy 15 days beyond the date of his injury, when it is claimed he became totally and permanently disabled, and continued so until his death. Premiums were no longer due. This policy had matured so far as this subject of indemnity is concerned by reason of the happening insured against. McGovern v. United States (D. C.) 294 F. 108.

148

A subsequent lapse of the policy in other respects could not operate as a release of the company for any liability on account of total disability which had arisen prior to that time. Illinois Bankers Association v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379. Provisions in the policy which automatically canceled the insurance upon his termination of employment could not under these circumstances become applicable. * * * Of course, it would be different if his total and permanent disability arose after the policy lapsed."

In Burkheiser v. Mutual Accident Association of the Northwest, 61 Fed. 816, 26 L. R. A. 112, Burkheiser was insured against accidental personal injuries. On December 15, 1890, Burkheiser was notified of the levy of an assessment on the members of the association, payable January 15, 1891. On December 20, 1890, he suffered an accidental personal injury, from which he died January 23, 1891. The by-laws of the association provided that failure to remit an assessment within 30 days of the date of the notice of levy should terminate the membership of the insured. The association contended the certificate of membership was discharged. The court said:

"The policy insures against personal bodily injuries effected during the continuance of membership in this insurance through external, violent and accidental means. The language of the contract is plain and unambiguous. It was clearly designated to effect the object of the association, which was to indemnify for injuries sustained during membership. The consideration paid by the assured is for such protection. The injury which resulted in the death of Mr. Burkheiser occurred during such membership. The accidental injury was the cause, the death, the consequence. The contract indemnifies against injuries produced by accident as the operating cause, and occurring during membership. * * *

"The membership ceases; the legal liability for previous accidental injury remains. By one condition of the policy, it was competent for the association to cancel the certificate of membership at any time upon refunding paid unexpired assessments or at the expiration of time covered by any one paid assessment. Can it be claimed that the association under this provision could upon complying with its condition absolve itself from liability for an accident occurring previous to such cancellation? We think not. Cessation of membership, whether voluntary or involuntary, operates prospective'y, not in derogation of acquired rights or in releasing of antecedent liability."

Under its second proposition defendant urges that plaintiff was not entitled to have the question of total and permanent disability submitted to the jury, for the reason that insured was paid his salary by the employer and actually performed some of the duties of his employment. Defendant cites Otis Elevator Co. v. Havely, 148 Okla. 82, 296 P. 1106, in support of this proposition. This was a compensation case brought to review an award of the Industrial Commission. Defendant quotes from this case as fo lows:

"Incapacity or disability cannot be found to be total where it appears that the claimant's earning power is not wholly destroyed and that he is still capable of performing remunerative employment. In such a case he is under the obligation of making active efforts to procure such work as he can still perform."

Examination of this case discloses that the above quotation was taken from the case of Integrity Mutual Casualty Co. v. Garrett, 100 Okla. 187, 229 P. 282, also a compensation case, and this court in turn had in the Garrett Case quoted from Ruling Case Law.

The spirit of the Workmen's Compensation Act is to allow compensation for loss of earning power. An injured employee who is able and actually performs other than his regular work does not receive full compensation under the acts.

In Ozark Mutual Life Association v. Winchester, 116 Okla. 116, 243 P. 735, there was a verdict and judgment for plaintiff for total permanent disability under a benefit certificate issued by defendant. The injury sustained was to a leg of plaintiff, a woman engaged in househo'd duties for her family. The evidence disclosed that after the accident she could still perform some household duties, such as sewing and washing dishes. The court said that the jury was fully justified in finding that she was totally and permanently disabled within the rule established in this jurisdiction. The court quoted from Continental Casualty Co. v. Wynne, 36 Okla. 325, 129 P. 16, as follows:

" 'Total disability,' under the provisions of an accident insurance policy, does not mean absolute physical inability on the part of the insured to transact any kind of business pertaining to his occupation. It exists, although the insured may be able to perform a few occasional or trivial acts relating thereto, if he is not able to do any substantial portion of the work connected with his occupation."

We find no error in submitting to the jury as an issue of fact the question of total and permanent disability.

Under its third proposition defendant urges that the court erred in overruling the motion for an instructed verdict for defendant. We have briefly summarized the testimony as to the disability of insured, and we hold that

the trial court committed no error in overruling the motion.

The defendant's last proposition is stated as follows:

"A contract to insure a party against the possible happening of a disability is unenforceable where the disability insured against had already happened."

This proposition is briefly discussed by defendant in its brief. No pertinent authority is cited. The final $500 certificate was issued on June 24, 1930, and plaintiff alleged and the proof disclosed that insured's total and permanent disability began on June 6, 1930, 18 days prior to the issuance of the last certificate.

Turning again to the group policy and the certificates issued under it, we do not find any provision that the certificates to be issued for each year of service were to be held in abeyance until it developed that insured was not totally and permanently disabled.

The certificate certified that the insurance was increased by $500, making the total insurance $2,000, and stated that the increased amount should be payable under the same conditions as expressed in the original certificate. The disability benefits were payable, not at the inception of the disability, but after it had existed for a period of six months. We have heretofore in this opinion held that the policy matured at the time the total and permanent disability had endured for six months, and that the liability of the insurance company then became fixed. The disability insured against had not already happened on June 24, 1930, as contended by defendant. Furthermore, the policy and certificate provided for proof of six months' total and permanent disability, which obviously could not be furnished until such disability had endured for a period of six months. Then the policy and certificate further provided that the company would pay the amount of insurance in force when it approved the proof. The policy and certificate having matured after six months' total and permanent disability and the liability of the insurance company having then become fixed, the amount of insurance then in force was $2,000, and the verdict and judgment for that amount were correct.

The judgment is affirmed.

Plaintiff in her brief prays judgment against the defendant and its surety on the supersedeas bond given on this appeal. The bond appears in the case-made, is signed by defendant, General American Life Insurance Company as principal, and United States Fidelity & Guaranty Company as surety, in the sum of $5,000, and contains the usual conditions to pay the condemnation money and costs in case the judgment shall be adjudged against the principal, or affirmed in whole or in part. Plaintiff, Martha T. Bryson, is the obligee in the bond, and is entitled to judgment on the bond. The verdict and judgment were for the sum of $2,000, with interest thereon at the rate of 6 per cent. per annum from October 1, 1931, and costs.

It is therefore ordered, adjudged and decreed by the court that the plaintiff, Martha T. Bryson, do have and recover of and from the defendant, General American Life Insurance Company, a corporation, principal, and United States Fidelity & Guaranty Company, surety, on said supersedeas bond, and each of them, the sum of $2,000, with interest thereon from the 1st day of October, 1931, at the rate of 6 per cent. per annum, and costs, for which let execution issue.

The Supreme Court acknowledges the aid of Attorneys N. C. Barry, Dennis H. Wilson, and E. C. Fitzgerald in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barry and approved by Mr. Wilson and Mr. Fitzgerald, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.